Richard W. COOEY, Petitioner,

v.

Carl S. ANDERSON, Warden,
Respondent.

No. 5:96 CV 797.

United States District Court,
N.D. Ohio,
Eastern Division.

Sept. 4, 1997.

William S. Lazarow, David H. Bodiker, Office of the Public Defender, Ohio Public Defender Com'n, Columbus, OH, Nathan A. Ray, Robert C. Baker, Baker, Chapman & Cahoon, Akron, OH, for Petitioner.

Karl R. Wetzel, Office of the Asst. Atty. Gen., Cleveland, OH, for Respondent.

## *ORDER*

SAM H. BELL, District Judge.

### I. *INTRODUCTION*

On December 5, 1986, Richard W. Cooey was convicted in the Common Pleas Court of Summit County, Ohio of two counts of aggravated murder, two counts of aggravated robbery, two counts of kidnaping, one count of felonious assault and and four counts of rape. The court sentenced Cooey to incarceration for 48 to 140 years for the robbery, kidnaping, assault, and rape convictions. In addition, it sentenced Cooey to death for the convictions of aggravated murder. Cooey appealed his convictions and sentences, but was denied relief by both the Ohio Ninth District Court of Appeals and the Ohio Supreme Court. After he was denied his petition for certiorari by the United States Supreme Court, he filed a petition for state post-conviction relief. Once again, the state courts denied Cooey his request for relief, and the United States Supreme Court once more denied his petition for certiorari.

On October 17, 1996, Cooey filed a petition for a writ of habeas corpus in this court under 28 U.S.C. § 2254. In response, the State of Ohio filed a Return of Writ in opposition. Subsequently, Cooey filed a Traverse in Opposition to the Return of Writ. On April 29, 1997, the court held a hearing on this petition that afforded both parties

the opportunity to present their position on various issues relevant to the petition, including the issue of procedural default. Upon consideration, the court finds that at least some of Cooey's 23 claims of error in his petition were denied by the Ohio courts on procedural grounds and not on their merits. Consequently, in deference to the judiciary's traditional adherence to the principles of federalism and comity, the court must refrain from considering the merits of those claims. Furthermore, the court finds that Cooey's remaining claims lack sufficient merit to warrant a grant of the requested writ. As a result, and for the reasons more fully detailed herein, the court shall deny Cooey's petition for the writ.

## II. *BACKGROUND*

On the night of August 31, 1986, Wendy Offredo and Dawn McCreery were brutally raped and murdered. At around midnight, Ms. Offredo and Ms. McCreery were driving south along Interstate 77 in Akron, Ohio. Both had just finished working a shift together at a local restaurant. Neither, however, ever reached their destination. Two days later, their bodies were found behind a shopping mall. The police immediately began an intense investigation, and officers soon found their way to the home of Petitioner Cooey. When confronted by the officers, Cooey confessed to having kidnaped, robbed, raped and murdered both women. In addition, he provided the disturbing details of his acts.

As Offredo and McCreery's car drove along the highway that night, it passed underneath a bridge upon which stood Petitioner and three of his friends. The four men had planned to drop chunks of concrete onto cars passing below them. The men quickly acted on their plan, and dropped a concrete chunk through the windshield of a randomly selected car as it sped under the bridge. Offredo and McCreery occupied that randomly selected car, and they quickly pulled over to the side of the road after being struck.

The women were then accosted by the four men, who had scurried down from the bridge under the guise of offering them assistance. After accepting the men's offer of a ride to a telephone to call for help, the women were subsequently taken to a field just a short distance from the accident scene. There, they were subjected to the rape and ultimately murder by Cooey and his associates.

Cooey was indicted by a Summit County grand jury on September 8, 1986. The indictment charged him with two counts of murder in violation of Ohio Rev.Code § 2903.01(A) and (B), including three specifications of aggravating circumstances in violation of Ohio Rev.Code §§ 2929.04(A)(3), (5) and (7). In addition, Cooey was charged with two counts of kidnaping with the purpose of engaging in nonconsensual sexual activity, in violation of Ohio Rev.Code § 2905.01(A)(4), and two counts of rape, in violation of Ohio Rev.Code § 2907.02(A). Finally, Cooey was also indicted on two counts of aggravated robbery, in violation of Ohio Rev.Code § 2911.01(A)(1), and one count of felonious assault, in violation of Ohio Rev. Code § 2903.11(A)(2).

After entering a plea of not guilty to all of the counts, Cooey waived his right to a jury trial. Instead, he elected to be tried before a three-judge panel pursuant to Ohio Rev.Code § 2945.05 and § 2945.06. The panel found Cooey guilty on all counts and specifications. Less than a month later, the same panel convened for a mitigation hearing, pursuant to Ohio Rev.Code § 2929.03(C)(2)(b), and found that any mitigating factors in the case were outweighed by the case's aggravating circumstances. Consequently, the panel merged the two convictions of aggravated murder convictions under § 2903.01(A) into the two convictions under § 2903.01(B). Cooey was then sentenced to a term of incarceration for each of the non-murder convictions and a sentence of death for each of the convictions of murder.

Cooey appealed his conviction and sentence to the Ohio Court of Appeals for the Ninth Judicial District. That court affirmed the trial court's decision. *State v. Cooey*, 1987 WL 31921, No. 12943 (9th Dist.Ohio App. Dec. 23, 1987). Cooey then filed an appeal to the Ohio Supreme Court. Once again, both the conviction and the sentence

were affirmed. *See State v. Cooey*, 46 Ohio St.3d 20, 544 N.E.2d 895 (1989).

Cooey next filed a motion for rehearing before the Ohio Supreme Court, which was subsequently denied. Thereafter, he petitioned the United States Supreme Court for a writ of certiorari. That petition was also denied. *Cooey v. Ohio*, 499 U.S. 954, 111 S.Ct. 1431, 113 L.Ed.2d 482 (1991).

Having exhausted his rights to directly appeal his conviction and sentence, Cooey then sought to obtain post-conviction relief from the Ohio courts. He filed a petition to vacate or set aside his sentence pursuant to Ohio Rev.Code § 2953.21 in the Summit County Court of Common Pleas. Upon consideration, the court dismissed both the petition itself and a subsequent motion for relief from judgment. *State v. Cooey*, No. 86–09–1109A (Com. Pl. Summit Cty. July 21, 1992). Cooey then appealed those decisions to the Ohio Court of Appeals for the Ninth Judicial District, which affirmed them, *State v. Cooey*, 1994 WL 201009 (9th Dist.Ohio App. May 25, 1994), and to the Ohio Supreme Court, which declined to hear the request. *State v. Cooey*, 70 Ohio St.3d 1465, 640 N.E.2d 527 (1994).

Cooey next sought to reopen his direct appeals. That request, and a subsequent request for reconsideration, were denied by the Ninth Judicial District, *State v. Cooey*, No. 12943 (9th Dist.Ohio App. Jan. 10, 1995), and the Ohio Supreme Court. *State v. Cooey*, 73 Ohio St.3d 411, 653 N.E.2d 252 (1995); *State v. Cooey*, 74 Ohio St.3d 1423, 655 N.E.2d 742 (1995). On October 2, 1996, Cooey filed a petition for a writ of habeas corpus which is now before the court.

### III. *ANALYSIS*

#### A.

■ Congress provided for the writ of habeas corpus to redress errors in the administration of criminal justice that result in deprivations of life or liberty. In general, a prisoner may petition a federal district court for the writ of habeas corpus whenever he is detained in violation of the Constitution or other federal law. This right to petition for the writ is not, however, unlimited. For example, a prisoner must usually first exhaust all available remedies in the state courts before turning to the federal courts for relief. *See Granberry v. Greer*, 481 U.S. 129, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987).

■ The parties in this case agree that the doctrine of exhaustion does not prevent Mr. Cooey from obtaining the relief which he requests in his petition. Nevertheless, they do not agree as to the impact of yet another possible barrier to a prisoner's request for the writ. In its Return of Writ, Respondent specifically argues that a majority of Cooey's 23 claims may not even be considered by this court under the doctrine of procedural default. Under this doctrine, a federal district court may not ordinarily consider the merits of a prisoner's federal claim if a state court previously dismissed the claim for failure to comply with state procedural law. In *Wainwright v. Sykes*, 433 U.S. 72, 90, 97 S.Ct. 2497, 2508, 53 L.Ed.2d 594 (1977), the Supreme Court explained the reasons for the doctrine in the context of a state restriction on non-contemporaneous objections:

> The failure of the federal habeas courts generally to require compliance with a contemporaneous-objection rule tends to detract from the perception of the trial of a criminal case in state court as a decisive and portentous event. A defendant has been accused of a serious crime, and this is the time and place set for him to be tried by a jury of his peers and found either guilty or not guilty by that jury. To the greatest extent possible all issues which bear on this charge should be determined in this proceeding: the accused is in the court-room, the jury is in the box, the judge is on the bench, and the witnesses, having been subpoenaed and duly sworn, await their turn to testify. Society's resources have been concentrated at that time and place in order to decide, within the limits of human fallibility, the question of guilt or innocence of one of its citizens. Any procedural rule which encourages the result that those proceedings be as free of error as possible is thoroughly desirable, and the contemporaneous-objection rule surely falls within this classification.

> We believe the adoption of the *Francis* rule in this situation will have the salutary

effect of making the state trial on the merits the "main event," so to speak, rather than a "tryout on the road" for what will later be the determinative federal habeas hearing. There is nothing in the Constitution or in the language of § 2254 which requires that the state trial on the issue of guilt or innocence be devoted largely to the testimony of fact witnesses directed to the elements of the state crime, while only later will there occur in a federal habeas hearing a full airing of the federal constitutional claims which were not raised in the state proceedings. If a criminal defendant thinks that an action of the state trial court is about to deprive him of a federal constitutional right there is every reason for his following state procedure in making known his objection.

*See also Lambrix v. Singletary,* —— U.S. ——, ——, 117 S.Ct. 1517, 1522, 137 L.Ed.2d 771 (1997) (noting that "[a]pplication of the 'independent and adequate state ground' doctrine to federal habeas review is based upon equitable considerations of federalism and comity").

■ But before it applies the procedural default doctrine to refrain from considering a claim's merits, the federal court must first determine whether the state court has plainly stated its reliance on procedural, as opposed to substantive, law. The Supreme Court established this "plain statement" rule for habeas corpus petitions in *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). In *Harris,* the Court considered a petitioner's claim that his incarceration stemmed from the ineffective assistance of counsel at trial. After the petitioner was convicted, the trial court dismissed his request for post-judgment relief. Subsequently, the state appellate court affirmed. In its affirmance, the appellate court first noted that, on direct review, the petitioner had not raised the ineffective assistance claim. Nevertheless, despite the limitations of the state doctrine of res judicata, it pro-

ceeded to determine the substantive merits of the claim.

On federal habeas review, the Supreme Court initially observed that the state appellate court considered both the procedural and substantive merits of petitioner's claim. It then applied the plain statement rule to the claim, and held that the state court had rested its affirmance on the claim's merits, not its failings under state procedure. Consequently, it, too, proceeded to consider the merits of the claim.

> [W]e now extend to habeas review the "plain statement" rule for determining whether a state court has relied on an adequate and independent state ground. Applying the "plain statement" requirement in this case, we conclude that the Illinois Appellate Court did not "clearly and expressly" rely on waiver as a ground for rejecting any aspect of petitioner's ineffective-assistance-of-counsel claim.

*Id.* at 265–266, 109 S.Ct. at 1044–1045. *See also Coleman v. Thompson,* 501 U.S. 722, 735, 111 S.Ct. 2546, 2557, 115 L.Ed.2d 640 (1991) (holding that "if the decision of the last state court to which the petitioner presented his federal claims fairly appeared to rest primarily on resolution of those [federal] claims, or to be interwoven with those claims, and did not clearly and expressly rely on an independent and adequate state ground, a federal court may address the opinion."); *O'Guinn v. Dutton,* 88 F.3d 1409, 1421 (6th Cir.1996) ("The federal courts may also review constitutional claims where it is unclear whether the claim has been previously determined.") (Merritt, J., concurring).

■ Even if the court concludes that a particular claim has clearly been procedurally defaulted, it may still consider the claim under certain circumstances. Specifically, the doctrine of procedural default need not apply where the petitioner can demonstrate good cause for his failure to conform to the procedural requirements established by state law and actual prejudice resulting from those requirements.[1] In *Wainwright,* the Court

---

**1.** In *Mitchell v. Rees,* 114 F.3d 571, 578 n. 11 (6th Cir.1997), the Sixth Circuit Court of Appeals noted that "the cause and prejudice requirement

is essential to the safeguarding of the principles of comity and federalism."

In *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), the Supreme Court

elected not to establish specific meaning for those terms. *Id.* ("Whatever precise content may be given those terms by later cases, we feel confident in holding without further explanation that they do not exist here."); *Moore v. Carlton,* 74 F.3d 689, 691 n. 3 (6th Cir .1996) ("The Supreme Court in *Wainwright* avoided a precise definition for 'prejudice,' leaving future cases to define the significance of the term.") (citing *United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)); *cf. Nagi v. United States,* 90 F.3d 130, 134 n. 1 ("While the precise meaning of "prejudice" is somewhat nebulous, it has been interpreted as an infection of the entire proceeding which results in a conviction violative of due process.") (citing *Frady,* 456 U.S. at 169, 102 S.Ct. at 1595.). Subsequently, however, the Court has held a petitioner may establish adequate cause-and-prejudice by offering proof of either ineffective assistance of counsel or an objective factor that impeded his counsel's efforts to comply with state procedural law, such as the novelty of the proposed claim. *See Reed v. Ross,* 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984); *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Furthermore, in at least one case, the Court held that this cause-and-prejudice analysis applies equally in the context of both capital and non-capital cases. *See Smith v. Murray,* 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986). In addition, a court may consider any claim that was denied on procedural grounds, but which grounds are not strictly or regularly followed. *See Bagby v. Sowders,* 853 F.2d 1340 (6th Cir.1988) (establishing a four-part inquiry for any district court considering the application of the procedural default doctrine that includes a review of how consistently the state courts apply the procedural rule at issue).

## B.

■ This is a capital case. Petitioner has been sentenced to death by the State of Ohio. That sentence, Petitioner argues, was a result of 23 errors at trial and on appeal that individually and collectively denied him of his right to a fair trial. In general, when reviewing any habeas petition, including a petition in a capital case, a district court must defer to the findings of fact made by the state trial court. Congress has long provided for such deference by the federal courts to state court findings of fact under 28 U.S.C. § 2254(d).[2]

■ Under § 2254(d), the court must initially determine if there was a determination of a factual issue in a state court proceeding which is evidenced by written indicia.

> [Section 2254(d) ] makes no distinction between the factual determinations of a state trial court and those of a state appellate court. Nor does it specify any procedural requirements that must be satisfied for there to be a "hearing on the merits of a factual issue," other than that the habeas applicant and the State or its agent be parties to the state proceeding and that the state-court determination be evidenced by "a written finding, written opinion, or other reliable and adequate written indicia." Section 2254(d) by its terms thus applies to factual determinations made by

---

recognized an alternative to the cause-and-prejudice exception. The Court held that "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Id.* at 496, 106 S.Ct. at 2649. In this case, Cooey does not assert actual innocence as reason for the court to consider the merits of his claim despite any procedural default. Therefore, the court shall not address this alternative.

**2.** In 1996, Congress passed the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. 104–132, 110 Stat. 1217, which, *inter alia,* swept away the former provisions of § 2254(d) and imposed a new standard of review. In its order dated February 21, 1997, (Docket # 49), the court held that the provisions of the AEDPA which amend the existing habeas corpus statute, such as those which amend § 2254(d), apply to cases like this one in which the petition was pending at the time AEDPA was enacted. Recently, however, in *Lindh v. Murphy,* —— U.S. ——, ——, 117 S.Ct. 2059, 2061, 138 L.Ed.2d 481 (1997), the Supreme Court held that AEDPA's amendments to existing habeas statutory provisions do not apply to such pending cases. Thus, to the extent that its order holds to the contrary, the court hereby vacates its previous order and shall refrain from applying the amending provisions of AEDPA to the present case.

state courts, whether the court be a trial court or an appellate court.

*Sumner v. Mata,* 449 U.S. 539, 546, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981). If so, the court must then presume that the determination was correct, unless the applicant can demonstrate any one of the following eight statutory factors:

(1) that the merits of the factual dispute were not resolved in the State court hearing;

(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

(3) that the material facts were not adequately developed at the State court hearing;

(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or

(7) that the applicant was otherwise denied due process of law in the State court proceeding;

(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record.

28 U.S.C. § 2254(d). "In addition to minimizing the 'friction' between the state and federal courts, the limited nature of the review provided by § 2254 also serves the interest that both society and the individual criminal defendant have 'in insuring that there will at some point be the certainty that comes with an end to litigation....'" *Id.* at 550, 101 S.Ct. at 771 (citation omitted).

1.

██ In his first claim of error, Cooey asserts that, in accepting his waiver of a jury trial, the trial court effectively denied his right to such a trial under the Sixth Amendment to the United States Constitution. That Amendment provides, in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." [3] In addition, Article III, section 2 provides that "[t]he [t]rial of all [c]rimes, except in [c]ases of [i]mpeachment, shall be by [j]ury." In *Gannett Co., Inc., v. DePasquale,* 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979), the Supreme Court noted that the trial of a defendant before a jury of his peers advances not only the interests of the defendant himself, but also the interests of the public as a whole. "[T]he public has an interest in having a criminal case heard by a jury, an interest distinct from the defendant's interest in being tried by a jury of his peers." *Id.* (citing *Patton v. United States,* 281 U.S. 276, 383, 50 S.Ct. 253, 74 L.Ed. 854 (1930)).

Nevertheless, the Court has long recognized the right of a defendant to waive his right to jury trial whenever he finds it in his best interest to do so. "Upon this view of the constitutional provisions we conclude that article 3, § 2, is not jurisdictional, but was meant to confer a right upon the accused which he may forego at his election. To deny his power to do so is to convert a privilege into an imperative requirement." *Patton v. United States,* 281 U.S. 276, 298, 50 S.Ct. 253, 258, 74 L.Ed. 854 (1930). Courts, however, may "not presume acquiescence in the loss of fundamental rights." *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) (citations omitted). Thus, when-

---

**3.** In *Gideon v. Wainwright,* 372 U.S. 335, 342–345, 83 S.Ct. 792, 795–797, 9 L.Ed.2d 799 (1963), the Supreme Court held that under the Fourteenth Amendment, the limitations on the federal government of the Sixth Amendment apply to the states as well. *See also Mitchell,* 114 F.3d at 574 n. 3.

ever a defendant attempts to exercise his right to waiver, a court must ascertain two characteristics of the waiver decision. First, the decision to waive one's right to jury trial must be knowing. Second, the decision to waive must be entirely voluntary. *See Id.* at 464–465, 58 S.Ct. at 1023.

In the instant case, the trial judge learned of Cooey's desire to waive his right to a jury trial at a pretrial hearing. At that hearing, Cooey's counsel told Judge Winter that "I think he understands what his constitutional rights are in terms of a jury. I think he understands all of the ramifications of the waiver of such a right." (Tr. Vol. IV at 3.) In response, Judge Winter asked Cooey himself if he understood the nature of his decision to waive his right. First, he asked, "Mr. Cooey, you do understand you have a constitutional right to a jury trial?" Cooey responded, "Yes sir." Second, he asked, "And after discussions with your attorneys and your family, you have agreed to waive that right voluntarily." Once again, Cooey answered "Yes sir." (*Id.*) No further questions regarding the waiver were asked.

Cooey now asserts that he did not voluntarily waive his right to jury trial with full knowledge of the consequences of that waiver. In response, Respondent first notes that the merit of this assertion need not even be considered. Specifically, it notes that the Ohio state courts denied this claim under the doctrine of res judicata. *See State v. Cooey*, 1994 WL 201009 at *9 (denying Cooey's claim of invalid waiver under the doctrine of res judicata because the claim could have been raised at trial or on direct appeal and was not raised at all). Consequently, it argues, this court is precluded from reviewing the claim under the doctrine of procedural default.

In *Maupin v. Smith*, 785 F.2d 135 (6th Cir.1986), the Sixth Circuit Court of Appeals summarized all the various considerations of the procedural default doctrine into a four-part test:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.... Second, the court must decide whether the

state courts actually enforced the state procedural sanction.... Third, the court must decide whether the state procedural forfeiture is an 'an adequate and independent' state ground on which the state can rely to foreclose review of a federal constitutional claim.... [Fourth, o]nce the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under Sykes that there was 'cause' for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Id.* at 138 (citations omitted).

Thus, the court must first consider the applicability of the asserted state procedural rule. Under the doctrine of res judicata, a petitioner may not initially assert any claim on collateral review that was or could have first been litigated during direct appeal. In particular,

> under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from judgment, any defense or any claimed lack of due process that was raised or could have raised by the defendant at the trial, which resulted in that judgment or conviction, or on an appeal from that judgment.

*State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967). In his Traverse to the Return of Writ, Cooey acknowledges the adoption and application of the doctrine by Ohio courts. (Traverse at 13.) Nevertheless, he contends that Ohio courts have also adopted a variety of exceptions to the general rule of preclusion. Furthermore, he contends that one of those exceptions in particular is applicable to the instant claim, rendering the general rule inapplicable.

In arguing the inadequacy of his waiver, Cooey asserts that evidence outside the record demonstrates his lack of understanding at the time he made the waiver. Cooey then argues that Ohio law exempts such claims relying upon evidence outside the official court record from the res judicata doctrine.

For example, in *State v. Smith,* 17 Ohio St.3d 98, 477 N.E.2d 1128 (1985), the Ohio Supreme Court considered the claim, on direct appeal, of a defendant that his counsel's failure to tender notice of alibi testimony constituted ineffectiveness of assistance of counsel. Upon consideration, the Court denied the defendant's ineffectiveness of assistance claim as stated. But in dicta, the Court noted that the defendant could bring a separate claim of ineffective assistance on post-conviction review if he was not informed of the decision not to tender the notice. The Court further noted that the failure of the defendant to raise this separate claim on direct appeal would not preclude him, under the doctrine of res judicata, from asserting the claim under the post-conviction relief statute.

> In the present case ... it is possible that the issue of competency herein could not fairly have been determined without resort to evidence dehors the record. This evidence includes trial counsel's previous legal experience and his motivations for failing to follow the notice-of-alibi rule. Under these circumstances, res judicata may not be a bar to postconviction relief.

*Id.* at 101 n. 1, 477 N.E.2d 1128.

Since *Smith,* however, at least two Ohio appellate courts have limited this exception to the general rule of res judicata described in *Perry.* In *State v. Coleman,* 1993 WL 74756 at *7 (Ohio.App. 1st Dist. Mar. 17, 1993), *appeal denied,* 67 Ohio St.3d 1450, 619 N.E.2d 419 (1993), the First Judicial District Court of Appeals held that the "[e]vidence presented outside the record must meet some threshold standard of cogency; otherwise it would be too easy to defeat the holding of *Perry* by simply attaching as exhibits evidence which is only marginally significant and does not advance the petitioner's claim beyond mere hypothesis and a desire for further discovery." Similarly, in *State v. Lawson,* 103 Ohio App.3d 307, 315, 659 N.E.2d 362 (1995), *appeal denied,* 74 Ohio St.3d 1404, 655 N.E.2d 184 (1995), the Twelfth Judicial District Court of Appeals found that "to overcome the res judicata bar, evidence offered dehors the record must demonstrate that the petitioner could not

have appealed the constitutional claim based upon information in the original record." (citation omitted). In both cases, the petitioner submitted exhibits outside of the record along with his petition. Nevertheless, both appellate courts held that the petitioner failed to establish that the claim could only be resolved by consulting such evidence.

In this case, Petitioner submitted no evidence at all to the state court during post-conviction review beyond the record. Instead, he argues that, before applying the res judicata doctrine, the state court should have conducted a hearing to afford him the opportunity to meet the burden discussed in *Lawson* and *Coleman.* In light of the Ohio Supreme Court's holding in *State v. Milanovich,* 42 Ohio St.2d 46, 325 N.E.2d 540 (1975), the court finds that it must agree. In *Milanovich,* the Court considered a post-conviction petition in which the petitioner claimed that his plea of guilty at trial was induced by a promise from counsel and therefore "deprive[d] ... of the character of a voluntary act." *Id.* at 49, 325 N.E.2d 540 (citing *Walker v. Johnston,* 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830 (1941)). The court agreed with the petitioner that the "petition raised a claim which was sufficient on its face to raise a constitutional issue ... and provided a substantive ground for relief." *Id.* at 50, 325 N.E.2d 540. Furthermore, it agreed that the lower court must conduct an evidentiary hearing to permit the petitioner the opportunity to substantiate the claim, at least where no motions for summary judgment have been filed. "In the case of a petition which states a substantive ground for relief and which relies upon matters outside the record, the court should thus proceed to a prompt evidentiary hearing, unless the prosecuting attorney files a motion for summary judgment in accordance with Civ.R. 56." *Id.* at 51, 325 N.E.2d 540.

Thus, in light of *Milanovich, Lawson* and *Coleman* would appear to presume that the petitioner has had at least the opportunity to offer evidence in support of his claim. As a result, where, as here, the petitioner has had no such opportunity, the court finds that the limitations on the *Smith* exception to the *Perry* rule do not apply. In short, the doc-

trine of res judicata does not apply to this claim.

■ Respondent next argues that even if the procedural default rule does not apply to this claim, the claim should be denied on it merits. As noted above, Cooey claims that the trial court erred in finding his waiver to be voluntary and knowing. Initially, the court must establish if the trial court's finding that Cooey's waiver was knowing and voluntary constitutes a "determination of a factual issue" that requires deference under § 2254(d). In interpreting § 2254(d), the Supreme Court has characterized a variety of assessments made by trial courts that are similar, even if not identical, to the assessment now at issue. *See, e.g., Maggio v. Fulford,* 462 U.S. 111, 117, 103 S.Ct. 2261, 2264, 76 L.Ed.2d 794 (1983) (per curiam) (characterizing the assessment of a defendant's competency to stand trial as a factual determination); *Wainwright v. Witt,* 469 U.S. 412, 429, 105 S.Ct. 844, 854–855, 83 L.Ed.2d 841 (1985) (discussing the nature of assessing a juror's impartiality); *Strickland v. Washington,* 466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984) (holding that the effectiveness of assistance of counsel is a mixed issue of law and fact). In *Thompson v. Keohane,* 516 U.S. 99, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995), the Court attempted to synthesize the somewhat conflicting holding of its earlier decisions. In that case, the Court specifically considered the character of a state-court determination that a defendant was not "in custody" during an interrogation. The Court first noted the essential elements of the "in custody" determination and then asked if an assessment of basic historical facts or a witness' credibility resolved the issue. After noting that "the crucial question entails an evaluation made *after* a determination" of witness credibility and basic historical facts, the Court held that the determination was an issue of law, not fact, warranting independent review by a federal habeas court. *Id.* at 113–115, 116 S.Ct. at 466 (emphasis added). Significantly, the Court contrasted the determination at issue in Thompson with voir dire of a juror or the determination of a defendant's competency. Unlike the voir dire of a juror, or the determination of a defendant's competency, which

"take[s] place in open court on a full record, the trial court does not have a first-person vantage on whether a defendant was "in custody" for *Miranda* purposes." *Id.* at 114, 116 S.Ct. at 466 (citations omitted).

In light of *Thompson,* the court finds that a trial court's determination of the knowing and voluntary nature of a jury waiver constitutes a factual determination entitled to deference under § 2254(d). In making such a determination, a trial court ultimately relies upon the credibility of the defendant before it. In addition, as in *Maggio,* the determination at issue involves an assessment of a subject "in open court on a full record." Finally, unlike the determination of a defendant's custody status in *Thompson,* the trial court's assessment of Cooey's waiver will not likely serve as precedent for future cases. *Cf. Id.* at 113–115, 116 S.Ct. at 466.

Thus, unless Cooey can demonstrate that one of the eight factors of § 2254(d) applies, the court must presume that the state court's finding is correct. Cooey argues that he can nonetheless meet the burden imposed by § 2254(d) in two ways. First, he argues that the trial court's limited oral inquiry failed to develop adequately the material facts. *See* 28 U.S.C. § 2254(d)(3). Second, he argues that evidence outside the record can, by way of an evidentiary hearing, demonstrate how very little he actually understood about the consequences of his waiver decision.

Upon consideration, the court disagrees. First, a trial court need not conduct a particularly detailed oral inquiry before finding that a waiver is knowing and voluntary. For example, in *United States v. Martin,* 704 F.2d 267 (6th Cir.1983), the Sixth Circuit Court of Appeals considered a jury waiver similar to that of Cooey in the instant case. As here, the trial court made only a brief oral inquiry into the defendant's understanding of his right to trial by jury.

THE COURT: Are counsel ready to proceed?

MR. TOMCZAK: Yes, your Honor.

MR. McDONALD: Yes, Your Honor.

THE COURT: I have the impression that there is some question of a waiver of jury trial in this case.

MR. TOMCZAK: Yes, your Honor.

THE COURT: What is the situation about that?

MR. TOMCZAK: First of all, I would like to correct the record. My client's name is Micky Arrington. I believe an alias appeared on the indictment. Mr. Arrington at this time has been advised of his right to waive trial by jury. At this point, he is willing to waive that right, and the prosecution is willing to consent to the matter being tried to this Court.

MR. McDONALD: That is correct, your Honor.

THE COURT: Is that a fact, Mr. Arrington?

MR. ARRINGTON: Yes sir.

THE COURT: Do we have a written waiver form? I usually prefer to have a written jury waiver if possible.

MR. McDONALD: Does the Clerk have one?

THE COURT: The Clerk hasn't one, apparently. She will get one from her office. We will await her return.

(Thereupon, a jury waiver form was signed by the parties.)

THE CLERK: If the Court please, the clerk has received the waiver of jury form.

*Id.* at 269–270.

The Circuit initially described the importance of juries in criminal prosecutions. It noted that "[t]he purpose of the jury trial is to prevent governmental oppression and arbitrary law enforcement" and that "[t]he protection of a jury affords lies in the interposition of the common sense judgment of a group of impartial laymen between the defendant and the potentially biased prosecutor and judge." *Id.* at 271 (citations omitted). The court then described four conditions which must be met for a defendant to be held to have waived his right to jury trial.

> Criminal defendants may waive their right to trial by jury only if four conditions are met. First, the waiver must be in writing. Second, the government attorney must consent to the waiver. Third, the trial court must approve the waiver. Fourth, the defendant's waiver must be voluntary, knowing and intelligent.

*Id.* Cooey does not dispute that each of the first three conditions established in *Martin* were met in the instant case. Instead, he argues that his waiver was infirm in that it was not sufficiently established to be voluntary, knowing and intelligent upon oral examination by the court.

■ Undeniably, "[t]he safeguard afforded by the jury trial right would be lost if either of these factors were not an attribute of every jury trial waiver. The waiver of this important right is effective only where it is not a product of duress or coercion." *Id.* (citation omitted). But as the Circuit held in *Martin*, "there is no constitutional requirement that a court conduct an on the record colloquy with the defendant prior to the jury trial waiver." *Id.* at 274. In fact, in *Martin*, the Circuit court explicitly declined to mandate that the trial court ask specific questions of a defendant before finding that his waiver is constitutionally sufficient. "[W]e decline to join several courts which have adopted mandatory supervisory rules requiring trial courts to personally interrogate defendants prior to accepting a jury trial waiver." *Id.* at 275. Instead, the Circuit elected to merely suggest that trial courts inform defendants of the benefits and burdens of waiving one's right to jury trial. "At a minimum, a defendant *should* be informed that a jury is composed of 12 members of the community, he may participate in the selection of jurors, the verdict of the jury must be unanimous, and that a judge alone will decide guilt or innocence should he waive his jury trial right." *Id.* at 274–275 (emphasis added). *See also Jells v. Ohio*, 498 U.S. 1111, 111 S.Ct. 1020, 112 L.Ed.2d 1101 (1990) (Marshall, J., dissenting) (denying certiorari in a case involving an Ohio trial court's failure to explicitly describe to a defendant the costs and benefits a jury waiver).

Second, the court finds that Cooey is not entitled to an evidentiary hearing as a matter of federal law. "Because § 2254(d) is an express limitation on the district court's jurisdiction, a district court is without authority to hold an evidentiary hearing on a matter on which the state court has made findings unless one of the factors contained in § 2254(d)

applies." *Mitchell v. Rees,* 114 F.3d at 577. The court finds none of these factors applicable to the instant case. Consequently, the court shall not hold a hearing on the claim nor disturb the presumption that the trial court's finding of knowledge and voluntariness was correct.

## 2.

In his second claim of error, Cooey asserts that the selection of the judicial panel which heard his case deprived him of his rights under the Fourteenth Amendment. Cooey specifically asserts that the trial court failed to comply with the statutory provision providing for the selection of a three-judge panel. Consequently, he argues, in convicting and sentencing him, the trial court ultimately deprived him of his liberty "without due process of law."

After Cooey waived his right to be tried by a jury, Judge Winter quickly set about to secure a three-judge panel, as is required under Ohio law. *See* Ohio.Rev.Code § 2945.06 (West 1997) ("If the accused is charged with an offense punishable with death, he shall be tried by a court composed of three judges. . . ."). The court record, however, is somewhat sparse as to the specific procedure that Judge Winter followed in assembling that panel. After accepting Cooey's waiver, the judge announced that "[t]he Court will now try and [sic] get a three-judge panel together." (Tr. Vol. IV at 4.) Unfortunately, no further mention is made of the panel assembly until a journal entry dated after the guilt phase of the trial was completed. In that entry, Judge Winter announced the selection of Judges Bayer and Morgan. (*See* Writ at ¶ 26.)

 As before, Respondent initially notes that this claim was held by the Ohio appellate court to have been precluded under the doctrine of res judicata. *See State v. Cooey,* 1994 WL 201009 at *9. The appellate court held that "[t]his claim was barred by res judicata because it could have been raised at Defendant's trial or on direct review of judgment of conviction but was not." As a result, Respondent further notes, this court may not consider the merits of the claim under the doctrine of procedural default. Once again, the court must respectfully disagree. This

second claim similarly relies on evidence lying outside the record. In particular, Cooey argues that such evidence demonstrates that Judge Winter improperly selected the panel, contrary to the express provisions of Ohio. Rev.Code § 2945.06. As noted previously, Ohio courts do not apply the doctrine of res judicata to claims relying upon such outside evidence. Furthermore, those courts that require applicants to demonstrate a modicum of such evidence appear to presume inherently that the applicant was provided either a hearing or an opportunity upon motion for summary judgment. Thus, the court finds that the res judicata, and consequently, the procedural default doctrine, do not apply to Cooey's second claim.

 Under § 2945.06, a three-judge panel in a death penalty case shall consist "of the judge presiding at the time in the trial of criminal cases and two other judges to be designated by the presiding judge or chief justice of that court, and in case there is neither a presiding judge nor a chief justice, by the chief justice of the supreme court." Cooey argues that the trial judge acted in a manner contrary to the statute by securing the remaining members of his panel for the trial. Furthermore, he points to the paucity of the record and effectively argues that the court's failure to detail the precise nature of the selection process itself constitutes unconstitutional arbitrary and capricious action.

Upon consideration, the court finds that this claim of error is invalid. In support of his arguments, Cooey cites the important Supreme Court decisions in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), and *Lockett v. Ohio,* 438 U.S. 586, 604, 98 S.Ct. 2954, 2964–2965, 57 L.Ed.2d 973 (1978). Neither *Furman, Gregg,* nor *Lockett,* however, effectively compels Cooey's position. For example, in *Furman,* the Court held that the imposition of the death penalty in the cases before it constituted cruel and unusual punishment in violation of the due process protections of the Eighth and Fourteenth Amendments. Admittedly, as Cooey argues here, in a concurring opinion, Justice Doug-

las did observe that "[a] penalty ... should be considered 'unusually' imposed if it is administered arbitrarily or discriminatorily." *Id.* at 249, 92 S.Ct. at 2731–2732 (citation omitted). But Justice Douglas, along with the others who also concurred in the per curiam opinion, addressed the specific issue of how states impose the death penalty itself, not the more general question of applying procedural rules in death penalty cases. *Id.* at 255, 92 S.Ct. at 2734–2735 ("We have, I fear, taken in practice the same position, partially as a result of making the death penalty discretionary and partially as a result of the ability of the rich to purchase the services of the most respected and most resourceful legal talent in the Nation."); *cf. Gregg,* 428 U.S. at 168, 96 S.Ct. at 2922–2923; *Lockett,* 438 U.S. at 597, 98 S.Ct. at 2960–2961.

Moreover, even if a trial court's violation of § 2945.06 implicates a defendant's rights to due process and equal protection, this court remains unconvinced that any such violation ever took place. First, Cooey offers no affirmative evidence to support his assertion that Judge Winter selected his co-panelists himself. Instead, the record simply reflects that, after accepting Cooey's wavier of a jury, the judge initiated the process of assembling a panel. Nothing in the record shows that Judge Winter did anything but follow the precise requirements of the statute by seeking the appointment of his colleagues by either the presiding judge or a justice of the Supreme Court. Second, and more importantly, the Ohio Supreme Court appears to have endorsed as valid the very actions which Cooey asserts as the basis of his claim. In *State v. Eley,* 77 Ohio St.3d 174, 672 N.E.2d 640 (1996), the Court considered a habeas petitioner's claim that he was unfairly denied the right to voir dire a three-judge panel

selected pursuant to § 2945.06. The Court denied that any such right to voir dire existed, and in doing so held that § 2945.06 permits the trial judge, in addition to the presiding judge and chief justice of the court, to select his co-panelists. "R.C. 2945.06 provides that the three-judge panel is to be composed of three judges: *the judge presiding at the time in the trial of criminal cases and two judges to be designated by that judge* or by the presiding judge or chief justice of that court." *Id.* at 184, 672 N.E.2d 640 (emphasis added). Thus, even if Judge Winter selected his co-panelists precisely as Cooey alleges, his actions would not appear to violate § 2945.06, at least as interpreted by the Ohio Supreme Court.

3.

In this third claim of error, Cooey asserts that the trial court improperly considered evidence obtained in violation of the Fourth Amendment. After placing Cooey under arrest, the police secured a warrant to search Cooey's apartment and his grandmother's automobile. Before trial, Cooey moved to suppress the evidence found, but the court denied his motion and considered it in both the guilt and penalty phases of the trial. Cooey now argues that the trial court's consideration of the evidence, at least in the penalty phase of the litigation, entitles him to a new trial.[4]

■■■■■■■ Cooey correctly acknowledges that in *Stone v. Powell,* 428 U.S. 465, 494, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976), the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."[5]

---

**4.** On direct appeal, Cooey challenged the trial court's denial of his motion to suppress the evidence seized from the automobile. Ultimately, the Ohio Supreme Court agreed that no probable cause existed to search the auto, but held that whatever error had resulted from introducing the evidence during the guilt phase was harmless. *See State v. Cooey,* 46 Ohio St.3d 20, 28, 544 N.E.2d 895 (1989).

**5.** In *McQueen v. Scroggy,* 99 F.3d 1302, 1332 (6th Cir.1996), the Sixth Circuit Court of Appeals

held that the *Stone* restriction on habeas claims based on violations of the Fourth Amendment applies equally in death penalty cases. The Court noted that "there is no precedent for [habeas applicant] McQueen's claim that a different rule should apply because this is a death penalty case. In fact, the Supreme Court has specifically rejected the idea that procedural bars that apply in other cases do not apply in capital cases." (citing *Smith v. Murray,* 477 U.S. 527, 538–39, 106 S.Ct. 2661, 2668, 91 L.Ed.2d 434 (1986)).

Nevertheless, he argues that he is entitled to relief because evidence obtained in an unconstitutional search in this case was introduced not only during guilt phase of trial, but also during sentencing. Upon review, the record clearly reveals that some evidence introduced at trial, including the evidence seized from the car, was considered by the court during the sentencing phase of the trial as well. (*See* Opinion of the Three Judge Panel, State's Ex. C at 8 (deciding upon Cooey's sentence on the basis of "evidence presented at trial.").) The record does not reflect, however, that the court specifically took the evidence seized from the automobile into account when sentencing Cooey. Moreover, even if this court were persuaded that the trial court did consider the automobile evidence at sentencing, it could not agree that Cooey is consequently entitled to a new trial.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." "The Amendment was primarily a reaction to the evils associated with the use of the general warrant in England and the writs of assistance in the Colonies, and was intended to protect the sanctity of a man's home and the privacies of life." *Stone v. Powell,* 428 U.S. at 482, 96 S.Ct. at 3046 (citations omitted). The Amendment itself only prohibits particular government behavior; it does not provide for any specific remedy or penalty. Consequently, the Supreme Court adopted what has come to be commonly known as the "exclusionary rule," which prohibits the introduction at trial of evidence obtained in violation of the Amendment. "The exclusionary rule was a judicially created means of effectuating the rights secured by the Fourth Amendment." *Id.* Ultimately, the Court held the rule limited both federal and state prosecutors seeking to introduce evidence obtained in violation of the Amendment. *See Gouled v. United States,* 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921); *Warden v. Hayden,* 387 U.S. 294, 304–305, 87 S.Ct. 1642, 1648–1649, 18 L.Ed.2d 782 (1967); *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

In *Stone,* the Court adopted a utilitarian approach to the question of whether habeas petitioners can bring Fourth Amendment claims that have been fully and fairly litigated by the state courts. Specifically, the Court treated the issue as one of deciding whether or not to extend the general exclusionary rule that applies to unconstitutionally obtained evidence during trials. "The answer is to be found by weighing the utility of the exclusionary rule against the costs of extending it to collateral review of Fourth Amendment claims." *Stone v. Powell,* 428 U.S. at 489, 96 S.Ct. at 3050. The Court then found that, on collateral review, the main cost of the rule, the diversion of the criminal process from the ultimate question of guilt or innocence, outweighed the limited benefit of additionally deterring future violations of the Fourth Amendment.

Nowhere in *Stone* does the Court limit its holding only to claims concerning evidence considered during the trial's guilt phase. Furthermore, the Court has never adopted such a view in its decisions that follow *Stone. See, e.g., Wainwright v. Sykes,* 433 U.S. 72, 79, 97 S.Ct. 2497, 2502, 53 L.Ed.2d 594 (1977) ("Only last Term in *Stone v. Powell,* the Court removed from the purview of a federal habeas court *challenges resting on the Fourth Amendment,* where there has been a full and fair opportunity to raise them in the state court.") (emphasis added). Indeed, such a view would not comport at all with *Stone's* utilitarian approach. After all, if the deterrence effect of excluding evidence during the guilt phase fades upon collateral review, so too must the effect of excluding evidence at sentencing, which has never been considered strong enough to justify exclusion even during direct review of a trial. *See United States v. Jenkins,* 4 F.3d 1338, 1344 (6th Cir.1993) ("The district court included the crack cocaine in the total amount of cocaine attributable to the conspiracy for purposes of calculating defendants' offense levels under the sentencing guidelines. The court held that the exclusionary rule did not apply even though it had ruled that the search was unconstitutional. We agree."). Consequently, the court finds that it may not exercise jurisdiction over Cooey's third claim.

#### 4.

In his fourth claim of error, Cooey asserts that the trial court impermissibly considered certain photographs of the victims' bodies during the trial's sentencing phase. During the trial's guilt phase, the court admitted 26 color slides depicting the victims at the scene of the crime. Subsequently, during sentencing, the trial court considered these same photographs when assessing the case's mitigating and aggravating factors. On direct review, the Ohio Supreme Court found that 11 of the slides were not gruesome. *State v. Cooey*, 46 Ohio St.3d at 36, 544 N.E.2d 895. Consequently, Cooey asserts, the Court implicitly found that the remaining 15 slides were gruesome, rendering the trial court in violation of the Supreme Court's edict in *Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 1204–1205, 51 L.Ed.2d 393 (1977) "that any decision to impose the death penalty be, and appear to be, based on reason rather than caprice or emotion."

Once more, Respondent asserts that Cooey's claim is precluded under the federal habeas doctrine of procedural default. Specifically, he notes that Cooey failed to raise the claim before the lower Ohio appellate court on direct review. As a result, he asserts, the Ohio Supreme Court reviewed the claim only for "plain error," thereby declining to consider the claim on its merits. Consequently, he concludes, this court is similarly precluded from reviewing the claim's merits.

▮ Upon its own review of the Ohio Supreme Court's decision, this court cannot agree with Respondent's characterization of the Ohio Supreme Court's analysis. After acknowledging that four of the photos were "highly repetitive," the Court found that the admission of those photos was nevertheless "harmless error." *State v. Cooey*, 46 Ohio St.3d at 36, 544 N.E.2d 895. It did not review the claim for "plain error." When reviewing a claim for harmless error, a court must assess "if the prosecution can prove beyond a reasonable doubt that a constitutional error did not contribute to the verdict." *Satterwhite v. Texas*, 486 U.S. 249, 256, 108 S.Ct. 1792, 1797, 100 L.Ed.2d 284 (1988) (citing *Chapman v. California*, 386

U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967)). In contrast, a court conducting a review for "plain error" must find that "but for the error, the outcome of the trial would have been otherwise." *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978). Thus, unlike a court reviewing for harmless error, a court reviewing for plain error must defer to the trial court's judgment unless the petitioner can establish that the error actually affected the verdict which was rendered. The Ohio Supreme Court itself recognized this distinction within its opinion, for it expressly reviewed Cooey's separate challenge to the prosecutor's closing remarks under "a plain error standard." *State v. Cooey*, 46 Ohio St.3d at 36, 544 N.E.2d 895. Therefore, the court finds that the Ohio Supreme Court considered the merits of Cooey's fourth claim, and shall itself proceed to do the same.

Upon its own independent review of the claim, the court finds that Cooey's fourth claim is unwarranted. In *Gardner*, a case which Cooey himself cites in support of his claim, the Court held that a petitioner was denied due process of law when his death sentence was imposed, at least in part, on the basis of confidential information which had not been disclosed to either petitioner or his counsel. But nowhere in *Gardner* does the Supreme Court prohibit a sentencing body from reviewing accurate photographs which depict the details of a defendant's particular crime. Cooey does not argue that the photographs' only value lay in their appeal to the panel's emotions or whims. Furthermore, he fails to establish that the photographs in fact appealed to the panel's emotions in this case. As a result, the court finds that it must deny Cooey's fourth claim on its merits.

#### 5.

In his fifth claim of error, Cooey argues that the trial court erred in admitting certain statements which the prosecution made during its closing remarks in the guilt phase of the trial. In those remarks, the prosecution referred directly to the effect of the crime not only on the two victims, but also their families as well. In particular, it observed:

> We have two families, in addition to what these girls were terrorized with, we have

two families that have lost the most precious gift we can receive, and that is their children. Now, I don't—I can't feel and I don't know how to feel for them, what they're going through, and nobody else in this courtroom can feel that, but that gift has been taken away from them for criminal intent that we have a difficult time even understanding.

(Tr. Vol. VI. at 343–344.) [6]

In response, Respondent notes that Cooey failed to raise the issues on direct appeal to the Ninth Judicial District Court of Appeals. In its direct review of the claim, the Ohio Supreme Court noted that Cooey failed to object to the statements at the time they were made. In addition, it noted that Cooey did not raise the claim on direct review to the Ohio appellate court. Thus, the Court applied Ohio's contemporaneous objection rule. Under the rule, the Supreme Court may only consider an assertion of error for "plain error" in the absence of an objection at trial or before the lower appellate courts. *See State v. Lawrence,* 44 Ohio St.3d 24, 27, 541 N.E.2d 451 (1989). The Court found no such plain error, in light of the fact that "[t]he reference [to the impact on the victims] was brief, the evidence overwhelming, and the case was tried to a three-judge panel." *State v. Cooey,* 46 Ohio St.3d at 31, 544 N.E.2d 895.

 Once again, the State asserts that the procedural default doctrine precludes this court from considering the claim before it. In this instance, the court agrees. In contrast to its review of Cooey's fourth claim for harmless error, the Ohio Supreme Court clearly limited its review of his fifth claim to one for plain error. Furthermore, it did so in light of the preclusive effect of Cooey's failure to present the claim to either the trial or lower appellate court. Cooey argues that the Court's review, however limited, served as a waiver, or "forgiveness," of any application of the res judicata rule. He notes particularly

that in reviewing the claim for plain error, the Ohio Supreme Court necessarily considered the merits of the claim under federal law.

In *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), the Supreme Court considered a similar argument made by another habeas applicant under sentence of death. In that case, an Oklahoma appellate court considered the claim that a defendant is entitled to psychiatric assistance upon a preliminary showing that the defendant's sanity will be an issue at trial. The Oklahoma court initially rejected the claim on its merits. Subsequently, however, it noted that Ake had failed to present the claim in his motion to the trial court for a new trial. Consequently, it held that the claim had been waived.

On direct review by the Supreme Court, the respondent state argued that the Oklahoma appellate court had applied the state's waiver rule to deny the claim, despite its review of the claim for "fundamental" error. The Court, however, rejected the argument. It first noted the Oklahoma court "made application of the procedural bar depend on an antecedent ruling on federal law, that is, on the determination of whether federal constitutional error has been committed." *Id.* at 75, 105 S.Ct. at 1092. Furthermore, it noted that the determination of federal law was "integral to the state court's disposition of the matter." *Id.* As a result, the Court held that no waiver had occurred, and proceeded to consider merits of the applicant's claim.

> In such a case, the federal-law holding is integral to the state court's disposition of the matter, and our ruling on the issue is in no respect advisory. In this case, the additional holding of the state court—that the constitutional challenge presented here was waived—depends on the court's federal-law ruling and consequently does not present an independent state ground for

---

**6.** Specifically, Petitioner argues that the prosecution's statements violated the Supreme Court's edict in *Gardner v. Florida,* 430 U.S. 349, 358, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), "that any decision to impose the death penalty be, and appear to be, based on reason rather than caprice or emotion." In addition, Petitioner cites to the Court's decision in *Booth v. Maryland,* 482

U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987). In all candor, the court fails to understand how either *Gardner* or *Booth* supports Cooey's claim. In each case, the Court considered the effect of evidence taken during the penalty, as opposed to the guilt, phase of a trial. In any event, as discussed below, the court need not address the merits of Cooey's claim.

the decision rendered. We therefore turn to a consideration of the merits of Ake's claim.

*Id.*

Six years later, however, the Court significantly limited the scope and applicability of *Ake.* In *Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), the Court again considered the issue of whether a state court's application of a procedural rule sufficiently implicated federal law so as to preclude federal review under the procedural default doctrine. In *Coleman,* a federal habeas applicant presented a claim to a federal district court that had been denied by the Virginia Supreme Court under Virginia Supreme Court Rule 5:5(a). That rule requires that any party filing an appeal must first file a notice of the appeal within 30 days of the judgment. Nevertheless, pursuant to its holding in *Tharp v. Commonwealth,* 211 Va. 1, 175 S.E.2d 277 (1970), the Court considered whether a denial of the "extension would abridge a constitutional right."*Coleman,* 501 U.S. at 741, 111 S.Ct. at 2560. As in *Ake,* the applicant argued that the state procedural rule required a determination of the claim's merits under federal law, thereby precluding application of the procedural default doctrine.

The Court noted its prior decision in *Ake,* but held that the decision was distinguishable on two grounds. First, it noted that *Ake* was presented to the Court pursuant to its authority under 28 U.S.C. § 1257 to directly review judgments of state courts. Conversely, *Coleman* addressed a post-conviction petition for a writ of habeas corpus under § 2254. *See Id.* ("*Ake* was a direct review case. We have never applied its rule regarding independent state grounds in federal habeas."). Second, it held that even if *Ake* does apply in federal habeas cases, the Virginia Supreme Court rule in question constitutes an independent state ground sufficient to federal review of the claim. *Id.* at 741–742, 111 S.Ct. at 2560 ("Coleman read that case as establishing a practice in the Virginia Supreme Court of examining the merits of all underlying constitutional claims before denying a petition for appeal or writ off error as time barred. A more natural reading is that

the Virginia Supreme Court will only grant an extension of time if the denial itself would abridge a constitutional right.").

In *Paprocki v. Foltz,* 869 F.2d 281 (6th Cir.1989), the Sixth Circuit similarly found that a state court's procedural practice did not constitute review of the merits of a federal claim. The Court considered a habeas petitioner's claim that a trial court erred in providing instruction to a jury. During the trial, the petitioner failed to object to the instruction. Consequently, on direct appeal, the state appellate court limited its review only to whether an affirmance of the conviction would "result in manifest injustice." *Id.* at 284. On review, the Circuit held that this limited review did not preclude a finding that the state court had denied the claim on state procedural grounds:

> What the state court of appeals did, as we understand it, was to enforce the procedural bar while reserving the right to excuse it if necessary to prevent manifest injustice. We would be loath to adopt an exception to the "cause and prejudice" rule that would discourage state appellate courts from undertaking the sort of inquiry conducted by the Michigan court, and we do not believe that the state court's explanation of why the jury instructions resulted in no manifest injustice can fairly be said to have constituted a waiver of the procedural default.

*Id.* at 285.

In light of *Coleman* and *Paprocki,* the court finds that in this case the Ohio Supreme Court did not waive the res judicata doctrine when it reviewed Cooey's claim for plain error. First, as in *Coleman* and *Paprocki,* this case involves an application for a writ of habeas corpus under 28 U.S.C. § 2254, not a direct appeal under 28 U.S.C. § 1257, thereby implicating different motivations for applying the default doctrine. In the context of direct review, the procedural default doctrine protects the jurisdictional integrity of the federal court. *See Ake,* 470 U.S. at 73, 105 S.Ct. at 1091 ("After ruling on the merits of Ake's claim, the Oklahoma court observed ... that the claim was thereby waived.... Despite the court's state-law ruling, we conclude that the state court's

judgment does not rest on an independent state ground and that *our jurisdiction is therefore properly exercised.*") (emphasis added). Conversely, in the context of a habeas petition, the doctrine of procedural default protects the distinct interests of comity and deference that are essential in our federalist system. *See Wainwright,* 433 U.S. at 90–91, 97 S.Ct. at 2508–2509.

Second, the Ohio Supreme Court's review for plain error in this case is effectively identical to the Michigan appellate court's review for manifest injustice in *Paprocki.* In that case, the Sixth Circuit found that such state review does not preclude federal application of the procedural default doctrine. The Circuit observed that "[t]he Michigan Court of Appeals did not conduct the sort of review ... that presumably would have been undertaken had there been a timely objection to them; instead, the court inquired only whether affirmance of the conviction would 'result in manifest injustice.'" *Paprocki,* 869 F.2d at 284 (citing *Michigan v. Paprocki,* No. 69499, slip op. at 2–3 (Mich.Ct.App. May 7, 1984)). Under Ohio law, a court conducting a review for plain error must find that "but for the error, the outcome of the trial would have been otherwise. Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a *manifest miscarriage of justice* ...." *State v. Long,* 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978) (emphasis added). Thus, the court concludes that, as in *Paprocki,* the Ohio Supreme Court did not rely upon anything but state procedural doctrine when it denied Cooey's sixth claim.

Additionally, Cooey fails to establish adequate cause for his procedural shortcomings. Cooey argues that his failure to present the claim to the Ohio appellate court was caused by the ineffectiveness of his appellate counsel. In *Smith v. Murray,* 477 U.S. 478, 106 S.Ct. 2678, 91 L.Ed.2d 397 (1986), the Supreme Court explicitly approved such an assertion as a means of establishing cause under the procedural default doctrine. The Court considered the claim of a habeas applicant that cause could be established by mere attorney error, short of unconstitutional inef-

fective assistance of counsel. It rejected that argument outright, holding that unless such error amounted to an unconstitutional deprivation, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the state's procedural rule." *Id.* at 488, 106 S.Ct. at 2645. Significantly, the court further held that "[i]neffective assistance of counsel, then[,] *is* cause for a procedural default." *Id.* (emphasis added).

In *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), the Supreme Court held that the Sixth Amendment guarantees the right to effective assistance of counsel during one's direct appeal as of right, in addition to during trial. As he must when asserting ineffective assistance of trial counsel, a petitioner challenging the effectiveness of his appellate counsel must demonstrate (1) deficient performance and (2) prejudice, or a reasonable probability that, but for the deficient performance, the result of the direct appeal would have been different. *Moore v. Carlton,* 74 F.3d 689, 692 (6th Cir.1996). "[A]n error by counsel does not authorize setting aside the judgment of the criminal proceeding if the error has no effect on the judgment." *Id.* (citation omitted).

In addition, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *McQueen,* 99 F.3d at 1315 (quoting *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069–2070). A habeas petitioner, not the state, bears the burden of demonstrating that "he was actually prejudiced by the claimed constitutional error." *Rust v. Zent,* 17 F.3d 155, 161 (6th Cir.1994). In any case, a reviewing court must "focus on whether counsel's errors have undermined the reliability of and confidence in the result, i.e., can one confidently say that the trial or proceeding has reached a fair and just result." *McQueen,* 99 F.3d at 1311 (citing *Lockhart,*

506 U.S. 364, 369–370, 113 S.Ct. 838, 842–843, 122 L.Ed.2d 180(1993)).

In light of the overwhelming evidence of Cooey's guilt, the answer to that question in this case is undeniably "yes." For example, on the day the bodies of the victims were found, Cooey visited an acquaintance and tried to sell him watches and jewelry stained with blood. *State v. Cooey,* 46 Ohio St.3d at 21, 544 N.E.2d 895. That same day, he showed another acquaintance a nightstick tainted with blood. *Id.* Furthermore, he bragged to both men that he had committed the murders. Specifically, he told one acquaintance how "his buddies dropped ... a rock off of a bridge onto the girl's car and then dumped them off behind Rolling Acres [Mall]" and that he "should see a billy club now that it wasn't the original color." *Id.* He told the other acquaintance "how he heated [sic] them three times and ... strangled them with shoelaces...." *Id.* at 22, 544 N.E.2d 895. When the police arrived at Cooey's home to arrest him, he was wearing a watch later identified as belonging to Ms. Offredo. *Id.* Moreover, Cooey gave the police a taped confession. *Id.* at 23, 544 N.E.2d 895.[7] In short, there is ample evidence to support the panel's verdict that Cooey committed the crimes for which he was convicted. As a result, the court finds that the trial court "reached a fair and just result," rendering invalid any claim of ineffective assistance related to the panel's finding of guilt. Therefore, Cooey is precluded from establishing cause on the basis of such alleged ineffectiveness for this or any other procedural default. Consequently, in the interests of comity and federalism, the court must refrain from considering the merits of Cooey's fifth claim of error.

### 6.

■ In his sixth claim of error, Cooey argues that the trial court erred when it failed to merge two specifications during the sentencing phase of trial. In so doing, Cooey further argues, the trial court denied him of his right to a fair sentencing proceeding under the Eighth and Fourteenth Amendments. In the indictment, the grand jury charged Cooey with two specifications that, if convicted of, would allow the state to impose a sentence a death. The first specification charged that Cooey committed murder for the purpose of escaping detection or punishment for another crime.

> The grand jurors further find and specify that the offense was committed for the purpose or escaping detection, apprehension, trial, or punishment for another crime (rape and/or aggravated robbery and/or kidnaping) committed by the offender.

(State's Ex. a at 1 (citing Ohio Rev.Code § 2929.04(a)(3)).) The second specification charged that Cooey committed murder as a principal offender and in conjunction with another crime.

> The grand jurors further find and specify that the aggravated murder was committed while, a) Richard Wade Cooey II was committing, attempting to commit, or fleeing immediately after committing or attempting to commit rape and/or kidnaping and/or aggravated robbery and that Richard Wade Cooey II was a principal offender in the commission of the aggravated murder and/or the aggravated murder was committed with prior calculation and design.

(*Id.* (*citing* Ohio Rev.Code § 2929.04(a)(7)).)

On direct appeal to the Ohio appellate court, Cooey did not raise this claim. Subsequently, when the Ohio Supreme Court considered the claim, it noted this failure to raise the issue below. Nevertheless, the Supreme Court reviewed the claim for "plain error," but held that no such error occurred. *See State v. Cooey,* 46 Ohio St.3d at 39, 544 N.E.2d 895 ("Cooey did not raise this error in the court of appeals, and we find it far from clear that it affected the panel's verdict.

**7.** Although related to broader mixed question of prejudice, these findings of the Ohio Supreme Court are entitled to deference under § 2254(d) as factual determinations of a state court. *See Strickland,* 466 U.S. at 698, 104 S.Ct. at 2070 ("[S]tate court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirements of § 2254(d) ....'"); *West v. Seabold,* 73 F.3d 81, 84 (6th Cir.1996) ("The issue of ineffective assistance of counsel presents a mixed question of law and fact, though any underlying historical facts found by state courts are presumed correct.") (citation omitted).

We therefore cannot hold it plain error."). As noted above, despite its review for plain error, the Court may be held to have effectively applied state procedural law in denying Cooey's claim. *See Coleman v. Thompson,* 501 U.S. at 741–742, 111 S.Ct. at 2560–2561; *Paprocki v. Foltz,* 869 F.2d at 285.

■■■ Once again, Cooey offers the ineffective assistance of his counsel as cause for his procedural shortcomings. Once again, the court must respectfully disagree. As discussed earlier, a petitioner challenging the effectiveness of his counsel must demonstrate deficient performance and prejudice. *Moore v. Carlton,* 74 F.3d at 692. To establish prejudice, a petitioner must demonstrate that "counsel's errors were serious enough to deprive the petitioner of a proceeding the result of which was 'reliable,'—'whether counsel's conduct so undermined the proper functioning of the adversarial system that the trial [a term that includes capital sentencing proceedings] cannot be relied on as having produced a just result.'" *Glenn v. Tate,* 71 F.3d, 1204, 1210–11 (6th Cir.1995) (quoting *Strickland v. Washington,* 466 U.S. at 686, 104 S.Ct. at 2063–2064).

Cooey specifically argues that his counsel's performance prejudiced the sentence imposed by the trial court. The court, however, disagrees, for it finds that the sentencing process in this case produced "a just result." Under Ohio Rev.Code § 2929.04(B), the trial court was required to weigh against the aggravating circumstances of the crimes a variety of mitigating factors, including any factor "relevant to the issue of whether the offender should be sentenced to death." As discussed previously, the evidence confirming the aggravating circumstances of Cooey's offenses is overwhelming. So, too, is the evidence confirming the paucity of any mitigating factors. In fact, Cooey offers no satisfactory explanation as to how the balance of aggravating circumstances and mitigating factors was at all infirm in this case. Even if counsel's ineffectiveness precluded the panel from finding a particular mitigating factor, Petitioner was not prejudiced when sentenced, for "[t]he existence of any of the mitigating factors ... does not preclude the imposition of a sentence of death on the offender."

Ohio Rev.Code § 2929.04(C). Consequently, any claim of ineffective assistance related to the panel's sentencing is invalid. Furthermore, Cooey is precluded from establishing cause on the basis of such alleged ineffectiveness for this or any other procedural default, and the court must refrain from considering the merits of Cooey's sixth claim of error.

7.

■■■ In his seventh claim of error, Cooey argues that the trial court erred in considering a pre-sentencing report because the report contained statements that were inflammatory and prejudicial. Under Ohio law, a defendant may request that a presentence investigation report be prepared for consideration by the trial court. In particular, Rule 32.2 of the Ohio Rules of Criminal Procedure provides that

[t]he report of the presentence investigation shall state the defendant's prior criminal record, the circumstances of the offense, and such information about defendant's social history, employment record, financial ability and means, personal characteristics, family situation, and present physical and mental condition, as may be helpful in imposing or modifying sentence or providing rehabilitative or correctional treatment, and shall state such other information as may be required by the court. Whenever the court, probation officer, or investigator considers it advisable, the investigation may include a physical and mental examination of the defendant.

Cooey asserts three specific errors in the report. First, he notes that at page 13 of the report, an Akron police officer expressed his opinion that Cooey ought to receive the death penalty. (Pet.'s Ex., Report at 13 ("Captain Jerry Foys, supervisor of the Akron Police Department's Detective Bureau, feels that the death penalty should be imposed in this case.").) Second, he notes that the report included an assault charge against Cooey that was ultimately dismissed and a gross sexual imposition charge that was never brought. Third, he notes that the report contained inculpatory statements allegedly made by Cooey during a psychiatric examination conducted to assess his state of mind

at time of the commission of the offense. Each of these portions of the report, Cooey asserts, was impermissible. Furthermore, he notes that in sentencing Cooey, the court declared that it would consider "[w]hat is contained in that presentence investigation...." (*See* Tr. Vol. VIII at 12–13.) Consequently, Cooey concludes, he was denied his right to a fair sentencing.

On direct review, the Ohio Supreme Court noted that Cooey failed to challenge the accuracy or completeness of the report during trial. *State v. Cooey*, 46 Ohio St.3d at 35, 544 N.E.2d 895. Nevertheless, it considered the merits of Cooey's challenge to the report, and denied the claim as unwarranted. *Id.* As a result, despite Cooey's failure to challenge the report during trial, this court shall proceed to do the same.

■ In *Gardner*, the Supreme Court declined to establish what generally may or may not be included in a presentence investigation report. "It is not a function of this Court to evaluate in the first instance the possibly prejudicial impact of facts and opinions appearing in a presentence report." 430 U.S. at 354 n. 5, 97 S.Ct. at 1203 n. 5. In *United States v. Silverman*, 976 F.2d 1502, 1508 (1992), however, the Sixth Circuit observed that "[t]he standard has always been that a sentence may not properly be imposed on the basis of material misinformation." (citing *Roberts v. United States*, 445 U.S. 552, 556, 100 S.Ct. 1358, 1362, 63 L.Ed.2d 622 (1980)). *See also United States v. Tucker*, 404 U.S. 443, 447, 92 S.Ct. 589, 591–592, 30 L.Ed.2d 592 (1972); *Townsend v. Burke*, 334 U.S. 736, 740–741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948). In this case, there is no evidence that the panel acted improperly in sentencing Cooey in light of the presentence report. First, the assault charge, while not part of Cooey's "criminal record" under Rule 32.2, is part of Cooey's "social history" under the same rule. Second, Cooey fails to establish that any of the allegedly infirm portions of the report were material. In particular, Cooey does not demonstrate that the panel relied upon any of the portions when it decided upon Cooey's sentence. Without question, the panel reviewed and considered "everything contained therein [the report]."

(Tr. Vol. VIII at 13.) But in acknowledging its consideration of the report, the panel cannot be held to have confirmed that the challenged portions had a certain or probable bearing on the court's determination of the appropriate sentence. Consequently, the court finds that Cooey's seventh claim is unwarranted and must be denied on its merits.

8.

■ In his eighth claim of error, Cooey argues that the trial court impermissibly considered victim impact statements when it decided upon a sentence of death for each of the two murders. Under Ohio. Rev.Code § 2929.12, a court must consider the physical, psychological and economic harm suffered by any victim of a non-capital felony crime. *See* Ohio Rev.Code § 2929.12(B)(2) ("The sentencing court shall consider ... [whether t]he victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense").

Prior to sentencing, the prosecution prepared three statements regarding harm to the victims' families for the court's review. In at least two of the statements, the victims specifically called for the trial court to impose a sentence of death. When it sentenced Cooey for each of the crimes for which he convicted, the trial court did not specifically distinguish which evidence was considered for each of the crimes. Moreover, the court expressly declared its general intention to consider the statements. (*See* Tr. Vol. VIII at 12–13 ("What is contained in the presentence investigation will be considered in this particular case for sentencing. That includes the victim impact statement which was prepared concurrently with the PSI, that will also be considered in mitigation and in sentencing.")). As a result, Cooey argues, when it sentenced Cooey to death for each of the capital offenses, the trial court must have considered the statements in reaching its decision, in violation of Cooey's rights under the Fifth, Eighth and Fourteenth Amendments.

The Supreme Court has not always looked favorably upon such victim impact statements. For example, in *Booth v. Maryland*,

482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), the Court considered the effect of various victim impact statements on a defendant's right to a fair sentence in death penalty cases. The Court first noted the content of the statements and then observed its irrelevance to the sentencing decision. Subsequently, it held that in considering the statements, the trial court risked imposing the death penalty in violation of the protections of the Eighth and Fourteenth Amendment.

> The VIS in this case provided the jury with two types of information. First, it described the personal characteristics of the victims and the emotional impact of the crimes on the family. Second, it set forth the family members' opinions and characterizations of the crimes and the defendant.... [W]e find that this information is irrelevant to a capital sentencing decision, and that its admission creates a constitutionally unacceptable risk that the jury may impose the death penalty in an arbitrary and capricious manner.

482 U.S. at 502, 107 S.Ct. at 2532.

In *Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), however, the Court expressly overruled much of its previous holding in *Booth.* The Court found that at least some victim impact statements could be admitted in a manner that protects against the risk of arbitrary and capricious action. After concluding the doctrine of stare decisis does not apply "when governing decisions are unworkable or are badly reasoned," the Court held that

> if the State chooses to permit the admission of victim impact evidence and prosecutorial argument on that subject, the Eighth Amendment erects no per se bar. A State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed. There is no reason to treat such evidence differently than other relevant evidence is treated.

*Id.* at 826, 111 S.Ct. at 2608–2609. *Payne,* however, addressed only some of the statements considered in *Booth.*

Our holding today is limited to the holdings of *Booth v. Maryland,* 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), and *South Carolina v. Gathers,* 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876, (1989), that evidence and argument relating to the victim and the impact of the victim's death on the victim's family are inadmissible at a capital sentencing hearing. *Booth* also held that the admission of a victim's family members' characterizations and opinions about the crime, the defendant, and the appropriate sentence violates the Eighth Amendment. No evidence of the latter sort was presented at the trial in this case.

*Id.* at 830, n. 2, 111 S.Ct. at 2611, n. 2. Consequently, at least some of the statements considered in *Booth* remain inadmissible even in light of *Payne. See Id.* at 834, 111 S.Ct. at 2613 ("This case presents no challenge to the Court's holding in *Booth v. Maryland* that a sentencing authority should not receive a third category of information concerning a victim's family members' characterization of and opinions about the crime, the defendant, and the appropriate sentence.") (Souter, J., concurring).

*Booth* specifically prohibits the consideration of certain victim impact statements in a capital sentencing decision. It did not address the separate question of what statements may be considered when deciding upon a *non-capital* sentence. As a result, Cooey must specifically demonstrate that those statements which remain inadmissible after *Payne* were considered by the trial court when it imposed a sentence of death for each of the two murders.

On direct review, the Ohio Supreme Court found no evidence to support Cooey's claim. The Court instead found that the trial court considered the objectionable statements only when deciding upon sentences for the non-capital felonies.

> [T]he court sentenced Cooey not only on the aggravated murder convictions, but simultaneously on all counts of the indictment. The sentencing opinion states that the victim impact statements were considered as required by *** [R.C.] 2929.12 ***- i.e., in determining the minimum sentences for the non-capital felonies. This indicates

that the court invoked the suffering of the survivors not in justification of the death penalty, but in justification of the lengthy consecutive sentences imposed for the non-capital felonies

Our view is reinforced by the statement: This court will see to it that you never have the opportunity to repeat these acts *during the remainder of your life.* (Emphasis added.) We note that the court began to pronounce sentence for the non-capital felonies immediately after this statement.

*Id.* at 34, 544 N.E.2d 895. In addition, the Court noted that "the sentencing opinion specifically states that the victim impact statements had no bearing on the court's decision to impose the sentence of death." *Id.*

Under 28 U.S.C. § 2254(d), that determination by the Ohio Supreme Court is entitled to deference. In *Mitchell,* the Sixth Circuit also considered the claim of a habeas applicant which was first presented to a state appellate court. The applicant in *Mitchell* raised the claim, *inter alia,* under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), that the make-up of the jury pool unconstitutionally excluded blacks. On collateral review, the state appellate court found that "the lack of evidence on the *Batson* issue does not justify this Court upsetting the judgment entered in the original cases." *Id.* (citation omitted). The majority opinion in *Mitchell* held that the state court's determination was a finding of fact entitled to deference under § 2254(d). Furthermore, the opinion criticized the dissent for its failure to give such deference to the state court finding:

The dissent fails to recognize that the petitioner's failure to develop in the state court proceedings the material facts necessary to support his constitutional claims is a procedural default that can be excused by the federal habeas court only upon a showing of cause and prejudice. Similarly, the dissent fails to recognize that the state court's holding that the record contained insufficient evidence of a *Batson* violation to justify setting aside petitioner's conviction is a finding of fact entitled to deference under § 2254(d) just as the state court's

finding in *Sumner* that " 'the facts in the present case' did not adequately support respondent's claim" was entitled to deference. *Sumner,* 449 U.S. at 545, 101 S.Ct. at 768.

*Id.* at 578 n. 11. Thus, as in *Mitchell,* this court must also defer to the findings of the state court in the absence of any of the eight circumstances listed in § 2254(d). Cooey makes no such showing. Consequently, the court must defer to the finding of the Ohio Supreme Court and refrain from independently assessing the merits of Cooey's eighth claim.

9.

█ In his ninth claim of error, Cooey argues that the trial court impermissibly denied him access to the victim impact statements both before and after they were considered by the trial panel. After objecting to the court's use of the statements, Cooey requested that the court make the statements part of the official record. The court rejected Cooey's request, stating that "it is not disseminated or made part of the public record." (Tr. Vol. VIII at 13–14.) Consequently, Cooey asserts, the trial court denied him of his rights to due process and effective assistance of counsel. Furthermore, he asserts that the court also violated the Eighth Amendment's prohibition against cruel and unusual punishment.

In asserting a right to review the statements, Cooey necessarily asserts that they were considered by the trial panel when it sentenced him on the capital offenses. The assertion, however, is unwarranted. As noted above, the Ohio Supreme Court found no evidence demonstrating that the trial court even considered the statements when sentencing Cooey to death. In addition, it noted that Cooey had complete access to the statements for the purposes of appeal and "will have such access for collateral review." *State v. Cooey,* 46 Ohio St.3d at 34, 544 N.E.2d 895. Under *Mitchell,* this court must defer to the findings of the state court pursuant to 28 U.S.C. § 2254(d) in the absence of one of eight specific circumstances. The court finds no evidence of any of these circumstances with respect to Cooey's ninth

claim. Thus, the court must defer to the finding of the Ohio Supreme Court, rendering Cooey's ninth claim of error meritless.

### 10.

▮▮▮ In his tenth claim of error, Cooey challenges the propriety of certain remarks made by the prosecutor during the final argument of the sentencing hearing. Cooey first notes that the prosecuting attorney made repeated reference to evidence concerning the impact of the crimes on the victims. For example, during the argument, the prosecutor noted that "... as this trauma and grief is real, so is the trauma and grief that the parents of Wendy and Dawn had to go through and even greater trauma that Dawn and Wendy themselves went through during that fateful night." (Tr. Vol. VIII at 91.) In addition, Cooey notes that the prosecutor made repeated reference to the brutality of the crimes, even though such brutality is not an aggravating factor to be considered under the Ohio Revised Code. (See, e.g., Tr. Vol. VIII at 92. ("... from the brutality of the consequences, to ultimately two girls ending up dead, ending up dead in a very, very brutal manner.")). Furthermore, Cooey asserts that the prosecutor impermissibly asked the trial court to consider Cooey's propensity to commit future violence. (See, e.g., Tr. Vol. VIII at 97 (urging the court to note "the propensity to commit the aggravated circumstances that he did, to the propensity to commit violence, which he did, the propensity to commit the ultimate act of taking another human life, which he did, and whether or not that propensity and condition might change in the future if the ultimate penalty imposed might change ...")).

Cooey also challenges the propriety of other remarks made by the prosecutor. He notes that the prosecutor commented on Cooey's alleged lack of remorse for the crime. (See, e.g., Tr. Vol VIII at 135–136 ("I've looked through every report that I can get my hands on and cannot find one iota of remorse which is consistent with criminal conduct.")). Moreover, Cooey notes that the prosecutor referred to statutory mitigating factors which he himself never raised. (See, e.g., Tr. Vol VIII at 92–93 ("When we look at those seven conditions, we see that a number

of them, we see that a number of them, were not only were not talked about, but really don't apply.")). Finally, Cooey asserts that the prosecutor improperly offered his own opinion as to what sentence ought to be imposed. (Id. at 100–101 ("I have a hard time rationalizing, in my own mind, what might—... outweigh the aggravating circumstances of those acts committed by this Defendant.")).

On direct review, the Ohio Supreme Court noted that Cooey failed to challenge the references to the victims' families before the Ohio appellate court. In addition, it noted that Cooey did not object to these statements, as well as the statements referring to the victims' own suffering, when they were made at trial. See State v. Cooey, 46 Ohio St.3d at 35, 544 N.E.2d 895 ("We note, however, there was no objection made at trial, nor was the issue raised at appeal."). It then reviewed the challenges to these statements only for plain error, and found that no such error had occurred. As noted above, despite its review for plain error, the Court may be held to have effectively applied state procedural rule in denying Cooey's claim with respect to these statements. As for Cooey's challenges to the remaining statements, these, too, are subject to procedural bar. On collateral review, the Ohio appellate court denied these challenges because they "could reasonably have been raised at defendant's trial or on direct review of his judgment of conviction but were not." State v. Cooey, 1994 WL 201009 at *5. Consequently, because Cooey offers no permissible cause for his default, either on direct or collateral review, the court must decline his invitation to consider the merits of his tenth claim.

### 11.

▮▮▮ In his eleventh claim of error, Cooey asserts that the trial court denied him of his right to allocution during sentencing. (See generally Tr. Vol. VIII at 141–147.)

Allocution, a defendant's right to speak in his or her behalf before pronouncement of sentence, is not an empty formality. A defendant has the right to address the sentencing court and demonstrate why he or she deserves a lesser penalty than the court would otherwise be inclined to im-

pose.... [It] is designed to temper punishment with mercy in appropriate cases, and to ensure that sentencing reflects individualized circumstances.

*United States v. Riascos–Suarez,* 73 F.3d 616, 627 (6th Cir.1996). Under Ohio law, a defendant "must be ... asked whether he has anything to say as to why judgment should not pronounced against ·him." Ohio Rev.Code § 2947.05 (West 1997). Furthermore, Ohio Rule of Criminal Procedure 32(a)(1) provides that "[b]efore imposing sentence the Court shall ... address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment."

Cooey did not raise this claim on direct appeal. Consequently, when he asserted the claim in his state post-conviction petition, the Ohio appellate court denied it under the res judicata doctrine. Specifically, the court noted that the claim could have been raised at trial or on direct review, but was not. *State v. Cooey,* 1994 WL 201009 at *5. In response, Cooey now attempts to recharacterize this eleventh claim of error as one of ineffective assistance of counsel at trial. But the court must hold Cooey to the actual claim he chose to assert, rather than a wholly distinct action created after the fact. After all, despite his more recent assertions to the contrary, Cooey did not file his eleventh claim of error as a claim for ineffective assistance. Instead, he elected to draft his claim as one of error on the part of the court, not counsel. Moreover, as the court discussed earlier, any deficiency by either trial or appellate counsel was not prejudicial to the reliability of the outcome of the trial. Consequently, Cooey fails to establish cause for his procedural default, and the court must refrain from considering the merits of Cooey's eleventh claim of error. ·

#### 12–13.

■ In his twelfth claim of error, Cooey asserts that the trial court improperly weighed aggravating factors in determining death as the appropriate sentence for his murder convictions. Under Ohio Revised Code § 2929.04(a), a court may not sentence a defendant to death unless the prosecution proves one or more statutory specification beyond a reasonable doubt. One such specification is provided in Ohio Revised Code § 2929.04(a)(7):

> The offense was committed while the offender was committing, attempting to commit, or fleeing immediately after committing or attempting to commit Kidnaping, Rape, Aggravated Arson, Aggravated Robbery, or Aggravated Burglary, *and either* the offender was the principal offender in the commission of the Aggravated Murder or, if not the principal offender, committed the Aggravated Murder with prior calculation and thought.

(emphasis added). In its sentencing opinion, the trial court stated that it found Cooey both (1) to be the principal offender and (2) to have acted with prior calculation and thought. ·(Tr. Opinion at 2–3.) Cooey first notes that the specification contained in § 2929.04(a)(7) requires· that the court consider only (1) *or* (2), not both (1) *and* (2), as was the case here. Subsequently, he argues that the trial court thus erred, because it effectively considered an aggravating factor beyond those authorized by Ohio law. ·

In his thirteenth claim of error, Cooey argues that the trial court erroneously combined the aggravating factors related to each murder and weighed them collectively against the mitigating factors. In its sentencing opinion, the trial court undeniably made no attempt to distinguish its consideration of the balance between the aggravating factors and mitigating factors for each count. Instead, it simply found that, in sum, "the aggravating circumstances outweighed the mitigating factors based upon ... the verdict of the Court that the Defendant was guilty of four counts of Aggravated Murder with three specifications each, plus other counts of Kidnaping, Rape, Robbery and Felonious Assault." (Tr. Opinion at 8.) In failing to consider the factors for each count individually, Cooey argues, the trial court deprived him of his right to a fair sentencing hearing.

On direct review, the Ohio Supreme Court noted that the claims had not been raised before the appellate court, and limited its review to one for plain error. *State v. Cooey,* 46 Ohio.St.3d at 38–40, 544 N.E.2d 895. The

Ohio Supreme Court acted appropriately in relying on the state res judicata doctrine to refrain from considering the merits of these claims. Consequently, this court may not consider the claims unless Cooey can establish cause and prejudice as described in *Sykes.* Cooey establishes no such cause and prejudice. Therefore, under the procedural default doctrine, the court must decline Cooey's request to consider the twelfth and thirteenth claims on their merits.

14.

■ Under Ohio Revised Code § 2929.04(B), if a sentencing court concludes that any of the aggravating factors implicating the death penalty under § 2929.04(a) applies, a trial court must consider and weigh seven statutory mitigating factors. In his fourteenth claim of error, Cooey argues that the trial court considered mitigating factors which he himself never raised. As a result, he further argues, the court effectively transformed his failure to present evidence on certain mitigating factors into an aggravating factor not provided under Ohio law.

On direct review, the Ohio Supreme Court denied the claim on it merits. Specifically, it found as fact that the "absence of mitigating factors was not impermissibly transformed into an aggravating circumstance." *State v. Cooey,* 46 Ohio St.3d at 39, 544 N.E.2d 895 (citing *State v. DePew,* 38 Ohio St.3d 275, 289–290, 528 N.E.2d 542 (1988) and *State v. Broom,* 40 Ohio St.3d 277, 292, 533 N.E.2d 682 (1988)).[8] Under *Mitchell,* this court must defer to the findings of the state court pursuant to 28 U.S.C. § 2254(d) in the absence of one of eight specific circumstances. The court finds no evidence of any of these circumstances with respect to Cooey's fourteenth claim. Therefore, the court must defer to the finding of the Ohio Supreme Court, rendering Cooey's ninth claim of error meritless. Consequently, this court may not consider the claims unless Cooey can establish cause and prejudice as described in *Sykes.* Cooey establishes no such cause and prejudice. As a result, under the procedural de-

fault doctrine, the court must decline Cooey's request to consider his fourteenth claim of error on its merits.

15.

In his fifteenth claim of error, Cooey argues that the trial court denied him of his right to a fair sentencing by misapplying Ohio's statutory mitigating factor for mental illness. Under Ohio Rev.Code § 2929.04(B)(3), the three-judge panel was required to consider '[w]hether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law.' Cooey first notes that the statute requires only a lack of substantial capacity. He then asserts that the trial court applied the stricter requirement of a lack of any capacity at all. As a result, he concludes, the trial court effectively misconstrued the mitigating factor, denying him of his rights under the Eighth and Fourteenth Amendments. On direct review, the Ohio Supreme Court denied this claim on its merits. *State v. Cooey,* 46 Ohio St.3d at 40, 544 N.E.2d 895.

Curiously, Cooey fails to cite to the trial record or sentencing opinion to support his characterization of the panel's construction and application of the mitigating factor set forth in § 2929.04(B)(3). Upon its own review, the court finds no evidence that the panel acted inappropriately in considering the mitigating factor. In its sentencing opinion, the panel considered the testimony of a clinical psychologist presented by Cooey:

> The Defendant was examined by Dr. Siddall, a clinical psychologist. He testified at the mitigation hearing at the request of the Defendant. As stated above, he found that the Defendant had a conduct disorder and a mental disorder caused by substance abuse. However, the psychologist found that the Defendant was not insane nor psychotic, had no mental defect, that he

8. In its Return of Writ, Respondent asserts that the Ohio Supreme Court reviewed this claim only for plain error. (Return of Writ at 55.) Upon its own reading of the Supreme Court's opinion, however, the court finds no such limita-

tion. Consequently, the court finds no indication that the Supreme Court based its finding on any procedural failure by Cooey in his direct appeal to the Ohio appellate court.

knew what he was doing was wrong, and that he could have conformed to the law. He further testified that the Defendant is immature, not flexible, seeks immediate gratification and has a tendency to blame others for his problems.

*State v. Cooey,* No. 86–09–1109 at 5 (Com.Pl. Summit Cty. Dec. 5, 1986)(sentencing opinion). Nothing in this discussion reveals any misapplication of the mitigating factor to Cooey's mental capacity. Furthermore, the psychologist testified that Cooey did not suffer from a mental disease or defect, thereby precluding even the need to consider the impact of such ailments on his mental capacity. Consequently, the court finds that Cooey's fifteenth lacks merit and must be denied.

### 16.

In his sixteenth claim of error, Cooey asserts that the trial court considered evidence that had been found to be inadmissible by the Ohio reviewing courts. Specifically, he notes that the trial court considered victim impact statements, statements he himself made contained in a presentence investigation report, evidence that had been seized pursuant to an invalid warrant, and unduly gruesome photographs. On appeal, the reviewing courts found that the trial court had erred in admitting the evidence, but applied the traditional presumption that a court, in contrast to a jury, only considers evidence which was properly admitted. Consequently, they applied a deferential standard of review and found that whatever consideration may have been given did not prejudice Cooey in light of the other evidence. Cooey now argues that the application of such a presumption itself violates his constitutional right to a fair trial, for judges have no greater skill than juries in mentally segregating irrelevant, inflammatory or prejudicial evidence.

This argument raises an interesting question. After all, empirical data might confirm Cooey's contention that judges differ little from juries in their cognitive ability to sort evidence and apply only that which has been properly admitted. But courts, including the Sixth Circuit Court of Appeals, have long presumed that judges can indeed distinguish

between admissible and inadmissible evidence without running afoul of the protections first established in the Bill of Rights. For example, in *United States v. McCarthy,* 470 F.2d 222 (6th Cir.1972), the Sixth Circuit agreed with the appellant that the trial court had admitted evidence that was irrelevant and prejudicial. It also agreed that if the trial had been presented to a jury, "[i]t is conceivable that the appellant would in such a circumstance be entitled to a new trial." *Id.* at 224. Nevertheless, it declined to grant appellant his request for a new trial. In particular, it noted the widespread acceptance of a presumption of care exercised in a bench trial, and expressed no concern for any impact on the appellant's constitutional rights:

> It is well settled that in a non-jury trial the introduction of incompetent evidence does not require a reversal in the absence of an affirmative showing of prejudice. The presumption is that the improper testimonial evidence, taken under objection, was given no weight by the trial judge and the Court considered only properly admitted and relevant evidence in rendering its decision.

*Id.* (citing *United States v. Krol,* 374 F.2d 776 (7th Cir.1967), *certiorari denied,* 389 U.S. 835, 88 S.Ct. 46, 19 L.Ed.2d 97; *Fotie v. United States,* 137 F.2d 831 (8th Cir.1943); *United States v. Dillon,* 436 F.2d 1093, 1095 (5th Cir.1971); *United States v. Miles,* 401 F.2d 65, 67 (7th Cir.1968); *Butler v. United States,* 138 F.2d 977, 980 (7th Cir.1943)). *See also United States v. Joseph,* 781 F.2d 549 (6th Cir.1986) (applying *McCarthy* ) and *Rogers v. McMackin,* 884 F.2d 252, 256 (6th Cir.1989) (same). In light of *McCarthy* and its progeny, the court finds no constitutional infirmity in the Ohio courts' deference to the superior legal abilities of a judicial panel. Therefore, the court declines Cooey's sixteenth claim on it merits.

### 17.

In his seventeenth claim of error, Cooey argues that the cumulative effect of evidence admitted in error during the trial denied him his constitutional right to a fair trial. Cooey first notes that both the appellate court and the Ohio Supreme Court acknowledged that a variety of evidence was admitted in viola-

tion of his rights under the Fourth, Fifth, Eighth and Fourteenth Amendments. He then asserts that, in sum, these errors denied him of his constitutional rights, even if they did not when considered individually.

On direct appeal, the Ohio Supreme Court rejected Cooey's claim of cumulative error. The Court first noted that it had "rejected some of these assignments of error, and some assigned errors were not objected to at the trial or appellate levels." Significantly, it then held that "[i]n any event, 'it is clear beyond a reasonable doubt that the large body of properly admitted evidence standing along, constituted overwhelming evidence.'" *State v. Cooey*, 46 Ohio St.3d at 37, 544 N.E.2d 895 (citing *State v. Williams*, 38 Ohio St.3d 346, 358, 528 N.E.2d 910 (1988)). On collateral review, the Ohio appellate court also rejected Cooey's cumulative error claim. "Inasmuch as the trial court correctly dismissed those 64 other claims, it correctly dismissed this claim as well." *State v. Cooey*, 1994 WL 201009 at *9.

■ The Sixth Circuit Court of Appeals has recognized that errors which may not individually deprive a defendant of a fair trial can do so when considered collectively. *See, e.g., Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir.1988). When reviewing the cumulative effect of various errors, a habeas court may not consider asserted mistakes which are not constitutional errors at all. *Lundy v. Campbell*, 888 F.2d 467, 481 (6th Cir.1989); *cf. United States v. Rivera*, 900 F.2d 1462, 1471 (10th Cir.1990) ("[C]umulative-error analysis should evaluate only the effect of matter determined to be in error, not the cumulative effect of non-errors."). Moreover, "any errors complained of must not have been procedurally barred from habeas corpus review." *Derden v. McNeel*, 978 F.2d 1453, 1458 (5th Cir.1992) (en banc), *cert. denied*, 508 U.S. 960, 113 S.Ct. 2928, 124 L.Ed.2d 679 (1993) (cited in *McKinnon v. State of Ohio*, 67 F.3d 300, 1995 WL 570918 at *12 (6th Cir.) (unpublished)). Cooey identifies fourteen specific errors at trial which collectively denied him of his right to a fair trial. Of these, some have been established by this court as non-errors. Others have been found to have been procedurally de-

faulted by Cooey in his state post-conviction proceedings. Thus, the court need only consider the cumulative effect of those asserted mistakes which remain.

■ Accumulated errors are not identical with reversible errors. Instead, "if the prosecution can prove beyond a reasonable doubt that a constitutional error did not contribute to the verdict, the error is harmless and the verdict may stand. The harmless error rule promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error." 486 U.S. 249, 255, 108 S.Ct. 1792, 1796–1797, 100 L.Ed.2d 284 (citing *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *Rose v. Clark*, 478 U.S. 570, 577, 106 S.Ct. 3101, 3105–3106, 92 L.Ed.2d 460 (1986)). When compared with the weight of other evidence admitted against Petitioner, the cumulative error in Cooey's trial "pale[s] into relative insignificance." *Lundy v. Campbell*, 888 F.2d at 481. In sum, the prosecution in this case has met its burden under *Chapman* to prove beyond a reasonable doubt that whatever cumulative error exists did not contribute to the panel's verdict of guilty. Consequently, the court finds that Cooey was not deprived of a fair trial by such cumulative error and hereby denies Cooey's seventeenth claim on its merits.

## 18.

■ In his eighteenth claim of error, Cooey argues that the Ohio Supreme Court improperly affirmed Cooey's sentence of death by reweighing the aggravating circumstances and mitigating factors of his crimes. In its review, the Court initially found that the trial court had erred when it weighed the circumstances and factors surrounding Cooey's offenses. Specifically, it found that the trial court erred in combining and collectively considering the aggravating circumstances of both murders. *State v. Cooey*, 46 Ohio St.3d at 38, 544 N.E.2d 895. It also found that certain specifications should have been merged, and that the panel should not have considered mitigating factors not raised by Cooey. *Id.* at 39, 544 N.E.2d 895. Finally, it held that the panel had misconstrued

the standard for legal insanity under Ohio Rev.Code § 2929.04(B) and that the panel should not have considered both Cooey's status as a principal offender and his use of calculation and design. *Id.* at 40, 544 N.E.2d 895. Subsequently, pursuant to Ohio Revised Code § 2929.05, the Court conducted its own review of the circumstances and factors, and concluded that "the properly admitted evidence overwhelmingly proves that the aggravating circumstances outweigh, beyond a reasonable doubt, the mitigating factors." *State v. Cooey,* 46 Ohio St.3d at 42, 544 N.E.2d 895.

In *Clemons v. Mississippi,* 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990), the United States Supreme Court explicitly affirmed the practice of appellate reweighing of aggravating circumstances and mitigating factors. In that case, the Mississippi Supreme Court found that the trial court had erred in balancing the circumstances and factors surrounding the defendant's crime. But instead of remanding the case back to the trial court for reconsideration, the Court itself considered the appropriate balance. On direct appeal, the petitioner challenged the Mississippi Supreme Court's practice, arguing that the practice deprived him of his rights under the Sixth, Eighth and Fourteenth Amendments. The Supreme Court agreed that Mississippi had indeed failed to satisfy the constitutional requirements for reweighing. More importantly, however, the Court held that such reweighing is not in itself a constitutional deprivation. "Nothing in this opinion is intended to convey the impression that state appellate courts are required to or necessarily should engage in reweighing or harmless-error analysis when errors have occurred in a capital sentencing proceeding.... Nevertheless, that decision is for state appellate courts, including the Mississippi Supreme Court in this case, to make." *Id.* at 754, 110 S.Ct. at 1451.

If it elects to reweigh, a state appellate court must clearly establish that it gave individualized consideration to a "defendant's circumstances, his background, and the crime." *Id.* at 749, 110 S.Ct. at 1449. In *Clemons,*

the Supreme Court found that Mississippi had failed to meet this burden:

> We find the opinion below unclear with respect to whether the Mississippi Supreme Court did perform a weighing function, either by disregarding entirely the "especially heinous" factor and weighing only the remaining aggravating circumstance against the mitigating evidence, or by including in the balance the "especially heinous" factor as narrowed by its prior decisions and embraced in this case.... In addition, although the latter statement does not necessarily indicate that no reweighing was undertaken, the court's statement can be read as a rule authorizing or requiring affirmance of a death sentence so long as there remains at least one valid aggravating circumstance.... Additionally, because the Mississippi Supreme Court's opinion is virtually silent with respect to the particulars of the allegedly mitigating evidence presented by Clemons to the jury, we cannot be sure that the court fully heeded our cases emphasizing the importance of the sentencer's consideration of a defendant's mitigating evidence.

*Id.* at 751–752, 110 S.Ct. at 1449–1450.

In this case, the Supreme Court of Ohio committed no such error. First, in its decision, the Court gave no consideration to those factors which the trial court had erroneously included in its analysis. *Id.* at 41–42, 544 N.E.2d 895. Second, it did not reach its decision merely on the existence of a single aggravating circumstance. Instead, it noted the specific nature of the crimes at issue, the use of deceit in committing those crimes, and the amount of force employed by the perpetrator. *Id.* ("[The mitigating factors] are outweighed beyond any reasonable doubt by the aggravating circumstances of rape and kidnaping. Cooey used deceit to lure Wendy and Dawn into his car, drove them to a deserted area, then took what he wanted from them by force. He beat them repeatedly with a nightstick, then tried to make sure Wendy was dead by strangling her."). Finally, the Court provided a thorough discussion of and gave careful consideration to all miti-

gating factors relevant to Cooey's sentence.[9] In sum, the Ohio Supreme Court acted properly when, pursuant to § 2929.05, it elected to reweigh the aggravating circumstances and mitigating factors of this case. Therefore, the court must deny Cooey's eighteenth claim of error on its merits.

19.

In his nineteenth claim of error, Cooey argues that he was denied effective assistance of counsel at trial, in violation of his rights under the Sixth Amendment. Cooey specifically asserts nineteen separate errors committed by his trial counsel, each of which served to deny him a fair trial. (*See* Pet. for Writ at ¶¶ 223–224(a)–(r).(detailing each of the nineteen errors asserted by Cooey to have denied him effective assistance of trial counsel).)

■ As discussed earlier with respect to Cooey's eleventh claim of error, the Sixth Amendment guarantees the right to effective counsel to all individuals accused of crimes. *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). To establish ineffective assistance of counsel, Cooey must first show that his attorney's performance was deficient such that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, he must show that the deficient performance prejudiced the defense to the extent that he did not receive a fair trial whose result was reliable. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Sullivan v. United States*, 11 F.3d 573, 576 (6th Cir.1993). When assessing the performance of counsel, courts must generally defer to the wisdom of trial counsel, indulging a strong presumption that the attorney rendered reasonable professional assistance and that his decisions represented sound trial strategy. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. Furthermore, to demonstrate prejudice, a petitioner must prove a reasonable probability that, but for counsel's unprofessional errors, the trial would have ended differently. *Id.* at 694, 104 S.Ct. at 2068; *see also McQueen v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir.1996) (stating that "[n]otwithstanding the outcome-determination focus in *Strickland*, ... an analysis focusing solely on mere outcome determination without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective.") (citing *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993)).

■ In its collateral review of the case, the Ohio appellate court considered many of these same assertions of attorney error. That court denied these claims of deficient performance after finding that the record revealed no evidence that Cooey had either received deficient performance or suffered prejudice. As noted earlier, under 28 U.S.C. § 2254(d), a federal court must defer to the factual determinations of a state court unless it finds that one of eight statutory exceptions applies. In contrast to such factual determinations, "mixed questions of law and fact warrant[ ] independent review by the federal habeas court." *Thompson*, 516 U.S. at 105–107, 116 S.Ct. at 462. "[T]he performance and prejudice components of the *Strickland* test are considered mixed questions of law and fact...." McQueen, 99 F.3d at 1311. Consequently, this court need not defer to the Ohio appellate court's findings.[10]

9. The Court carefully considered evidence regarding Cooey's physical and mental history. For example, it noted the testimony of Dr. Siddell, who discussed Cooey's "conduct disorder", substance abuse, and physical abuse as a child. It also noted the testimony of Cooey's mother, who also discussed the abuse Cooey suffered at an early age at the hand of his father. In addition, the Court considered the impact of Cooey's youth, at least in light of his service in the military. Finally, the Court considered Cooey's lack of any previous criminal convictions or delinquency adjudications. Nevertheless, the Court found that "the properly admitted evidence overwhelmingly proves that the aggravating circumstances outweigh, beyond a reasonable doubt, the mitigating factors." *State v. Cooey*, 46 Ohio St.3d at 42, 544 N.E.2d 895.

10. In *Mitchell*, the Circuit applied § 2254(d) and held that the district court committed reversible error in failing to defer to the state court's findings. Specifically, the Circuit noted that the district court should have deferred to a state court's finding that "the lack of evidence on the *Batson* issue does not justify this Court in upsetting the judgment entered in the original case." The so-called *"Batson"* issue, however, has long been recognized as a question of fact entitled to deference under § 2254(d). *See, e.g., Hernandez v. New York*, 500 U.S. 352, 367, 111 S.Ct. 1859, 1870, 114 L.Ed.2d 395 (1991) ("In *Batson*, we explained that the trial court's decision on the

■ Nevertheless, upon its own independent review of the individual claims, including those not considered by the state courts, this court finds that each lacks merit with respect to the requirements under *Strickland.* In particular, as noted by the court, Cooey fails to establish that he suffered prejudice from any alleged deficiency, in light of the overwhelming evidence that affirms the reliability of both the finding of guilt and imposition of sentences. Therefore, the court finds that the assistance of counsel provided to Cooey was entirely effective, and Cooey's nineteenth claim must be denied.

### 20–21.

■ In his twentieth claim of error, Cooey argues that he was received ineffective assistance of counsel during his direct appeal. Specifically, Cooey asserts 27 separate errors committed by his appellate counsel, each of which served to deny him of an effective appeal of his conviction and sentence. As discussed earlier, in *Evitts,* the Supreme Court held that the Sixth Amendment guarantees the right to effective assistance of counsel during one's direct appeal as of right. 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821. In *State v. Murnahan,* 63 Ohio St.3d 60, 584 N.E.2d 1204 (1992), the Ohio Supreme Court held that Ohio law does not provide for claims of ineffective assistance of appellate counsel in a post-conviction petition. As an alternative, the Court noted, a defendant may assert such a claim by filing an application for delayed reconsideration in the appellate court in which the alleged assistance had been provided. *Id.*

Pursuant to *Murnahan,* Cooey fled such an application with the Ohio appellate court. On January 10, 1995, the appellate court denied the application upon noting that Cooey "had an opportunity to timely file an application for reopening within the 90 day period after July 1, 1993, but failed to do so." *State v. Cooey,* No. 12943, 1987 WL 31921 (9th Dist.Ohio App. January 10, 1995) (citing Ohio R.App.P. 26(B)). Cooey then appealed the Ohio appellate court's decision to the Ohio Supreme Court. The Supreme Court affirmed the lower court's ruling in light of Cooey's clear failure to comply with the state procedural rule. *State v. Cooey,* 73 Ohio St.3d 411, 653 N.E.2d 252 (1995).

Under the procedural default doctrine, this court must ordinarily respect a state court's denial of a claim if that denial is based on a petitioner's failure to comply with an established state procedural rule. As justifiable cause for his failure to present his claims within the 90 day period, Cooey asserts that his appellate counsel was constitutionally ineffective.[11] As discussed earlier, in *Murray,* the Supreme Court recognized that ineffective assistance of counsel can serve as cause for a procedural default. Nevertheless, in order to demonstrate ineffectiveness, a petitioner must demonstrate that the alleged deficiency of counsel prejudiced the result of his case.

This Petitioner cannot do. In *Moore v. Carlton,* 74 F.3d 689 (6th Cir.1996), the Circuit similarly considered a claim by a habeas petitioner that the ineffectiveness of his appellate counsel materially affected the outcome of his case. Initially, the Court agreed with the petitioner that his attorney was deficient in failing to file a significant portion of the record with the appellate court. *See Id.* at 693 ("Therefore, it seems clear that failing to file a significant portion of the record on direct appeal constitutes deficient performance, when the sufficiency of the evidence is an issue."). Subsequently, however, it found that the petitioner could not satisfy the requirement of prejudice. In particular, the Court found such prejudice to be impossible in light of the overwhelming evidence of

---

ultimate question of discriminatory intent represents a finding of fact.... *Batson*'s treatment of intent to discriminate as a pure issue of fact, ... accords with our treatment of that issue in other equal protection cases.") (citations omitted); *U.S. v. Davis,* 809 F.2d 1194, 1202 (6th Cir.Mich. 1987) (explaining that in finding an violation of the Equal Protection Clause under *Batson,* a "trial court ... makes a factual finding.").

**11.** Cooey also asserts this particular claim of ineffective assistance as his twenty-first claim of error. Both assertions are subject to the same standard of review. *See Smith v. Murray,* 477 U.S. 478, 106 S.Ct. 2678. Therefore, the court shall consider the efficacy of such a claim both as cause under the procedural default doctrine and as an independent assertion of error.

**1100**

guilt contained in the record. *Id.* ("Although Moore was afforded a full trial and convicted of premeditated murder, he contends a complete record on his direct appeal would have changed the outcome. a review of the record reveals ample evidence supporting Moore's conviction. The Tennessee Court of Criminal Appeals succinctly outlined the proof at trial...."). As the court discussed earlier when considering Cooey's fifth and sixth claims of error, the evidence supporting Cooey's convictions and sentences in this case is similarly "ample." Therefore, the court finds that Cooey's twentieth and twenty-first claims of error is unwarranted and must be denied on its merits.

### 22.

■ In his twenty-second claim of error, Cooey asserts that he was not charged in an indictment signed by a grand jury foreman. Consequently, he argues, the trial court denied his right to be indicted by a grand jury under the Fifth Amendment. On direct review, the Ohio Supreme Court found no merit in this claim whatsoever. In particular, the Court reviewed the appellate record and found that a signed indictment had been issued. The Court first acknowledged that a signed indictment had not originally been made part of the appellate record. Nevertheless, it found that such an indictment was later included "after the other original papers were journalized." *State v. Cooey,* 46 Ohio St.3d at 30, 544 N.E.2d 895. Subsequently, the Court rejected Cooey's contention that the delay precluded consideration of the signed indictment as part of the record. "Regardless of when the signed indictment was journalized, that it was journalized at all requires us to accept it as genuine and as having been filed at the time indicated by the date stamp, for the journal of a court of record imports absolute verity absent clear and convincing evidence to the contrary." *Id.*

Cooey fails to establish any of the eight factors listed in § 2254(d) that would preclude deference to the Ohio Supreme Court's factual determination that Cooey's indictment was signed by the grand jury foreman. Consequently, under § 2254(d), this court must accept the state court's finding as valid.

Therefore, the court finds that Cooey's twenty-second claim must be denied.

### 23.

■ In his twenty-third claim of error, Cooey asserts that the Ohio death penalty scheme, as constructed under Ohio statutory law, is itself unconstitutional. On collateral review, the Ohio appellate court found that the claim "could reasonably have been raised at defendant's trial or on direct review of his judgment of conviction but [was] not." *State v. Cooey,* 1994 WL 201009 at *5. Consequently, it denied the claim under the doctrine of res judicata. *Id.*

The Ohio appellate court acted appropriately in relying on the state res judicata doctrine to deny the claims on collateral review. Consequently, this court may not consider the claims unless Cooey can establish cause and prejudice as described in *Sykes.* Cooey establishes no such cause and prejudice. Therefore, under the procedural default doctrine, the court must decline Cooey's request to consider his twenty-third claim on its merits.

## IV. *CONCLUSION*

At its core, a petition for the writ of habeas corpus poses a simple question: has the respondent detained the petitioner in violation of constitutional or federal law? The answer to this question, however, is rarely as simple. When considering the petition of an individual sentenced to death, the answer becomes even more complex, for the penalty of error is greater than in any other circumstance in all the law. In light of this complexity, a court must proceed cautiously and deliberately, as was well-noted by then Chief Judge Merritt in his concurring opinion in *O'Guinn:*

> It is not the function of the federal courts to kowtow to the political passions of the day that decree that we supply only a swift execution without regard to whether the accused is guilty or received a fair trial. In the judicial arena, there is no traditional social value or constitutional principle requiring rapid execution or extinction of human life....

It is our job to make sure that the traditional principles of federalism are honored. It is our job to see that a life is not taken in the absence of a fair trial in which the constitutional rights granted to the accused are observed or to allow an execution while there remains a serious unanswered question about whether the accused is in fact guilty of the crime charged. The process of deliberation, reflection, trial, review and the elimination of error and uncertainty takes time, including the time it takes to review new evidence when it becomes necessary. The traditional deliberative process must be fully complied with in order to insure that innocent life and the attributes of human dignity are preserved in the face of the biological passion and hostility in our species that lead us to kill each other without reason. If this traditional process of deliberation and reflection takes time, we must take the time. In light of the fallibility of human judgment, it is better that even the life of a guilty man be spared for a few years while we make sure that we are not making another fatal mistake.

88 F.3d at 1414 n. 1 (Merritt, C.J., concurring).

Having heeded Judge Merritt's well-advised caution, this court finds that Richard W. Cooey has not been detained in violation of constitutional or federal law, for the reasons provided above. Accordingly, the court hereby DENIES his petition for the writ of habeas corpus.

IT IS SO ORDERED.

### ORDER

The court has filed its order of decision in the above-captioned matter, effectively concluding this case. Accordingly, this action is hereby terminated pursuant to Federal Rule of Civil Procedure 58.

IT IS SO ORDERED.